UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>WILLIE DANCY, )<br>    Defendant )<br>) | Crim. No. 04-010387-RGS |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO SUPPRESS FRUITS OF ILLEGAL ARREST**

The Defendant, William Dancy, respectfully requests that this Court suppress the fruits of the illegal arrest and conduct an evidentiary hearing. In support of this motion, the Defendant states as follows.

**FACTS**

The present charges arise out the warrantless arrest of William Dancy at approximately 9:00 p.m. on the evening of December 8, 2004 at "Boomers Bar" in Brockton, Massachusetts.[1] The following provides a brief summary of the events leading up to the arrest of Mr. Dancy according to Detective Reardon, the reporting officer. Reardon, while stopped at a traffic light saw a Black Mercedes at a gas pump with males around it. He then saw a black male running westerly on Perkins Avenue. As the black male passed Reardon's vehicle, Reardon observed him raise a firearm from his side and point it toward the Mercedes which had just sped off. Next, the black male walked back easterly on the sidewalk of Perkins Avenue. The male then raised the firearm and fired one round in the air. The male then continued walking, and Reardon called in the observation to Brockton Police dispatch via radio. Reardon described the male as "having corn rolls, a gray hooded sweatshirt with writing on the front and dark blue jeans."

---
[1] All facts are taken from Detective Reardon's Report, attached hereto as Exhibit A.

Reardon dispatched several units and advised them that the party looked similar to "David Taylor."2  Reardon lost sight of the individual as he cut though several buildings. Reardon then "determined the black male had entered Boomers Bar," simply because "he did not observe the black male flee the area."

Reardon then entered the front door of "Boomers" after backup arrived, and several other officers entered the rear.  Trooper Walls, who had entered through the rear, observed Mr. Dancy inside "walking toward them."  Dancy turned around and was seized by Trooper walls.  The firearm and ammunition with which Dancy is charged were seized thereafter.

## ARGUMENT

### I.    THE EVIDENCE SHOULD BE SUPPRESSED BECAUSE THE ARREST WAS NOT SUPPORTED BY PROBABLE CAUSE

Although the standard for suppression is well established, several preliminary principles bear discussion here.  The Fourth Amendment to the United States Constitution, once of the touchstones of our free society, guarantees "the right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures."   U.S. Const. amend. IV.   A seizure of the person occurs whenever the police detain a suspect by restraining his or her freedom of movement. See Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968).

A felony arrest may be made in a public place without a warrant or a showing of exigent circumstances if the arrest is supported by probable cause.  United States v. Watson, 423 U.S. 411 (1976).  "When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the

---

2 According to the government, the Turret tape was not working at the time of the incident.  Only portions of the transmission were preserved.

officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." Beck v. Ohio, 379 U.S. 89, 96 (1964).

The United States Supreme Court has declared that the remedy for seizures made without probable cause is to exclude wrongfully seized evidence; such a rule was required, the Court reasoned, to deter future violations of the Fourth Amendment. See Weeks v. United States, 232 U.S. 383, 391-93 (1914). Law enforcement agents must rigorously adhere to the Fourth Amendment requirements or face the consequence of suppression. See United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997), citing Arizona v. Hicks, 480 U.S. 321, 326-27 (1987). Any piece of evidence or information obtained as a result of government illegality is a "fruit" of the illegality and may not be offered as evidence or used by the government to obtain evidence against someone whose rights have been violated. See Wong Sun v. United States, 371 U.S. 471 (1997).

Here, Dancy was immediately grabbed after being seen by Trooper Walls. (See Ex. A.). This seizure amounted to an arrest. The facts available to the arresting officers Mr. Dancy were insufficient to give rise to probable cause. Thus, all fruits of this arrest must be suppressed.

    **A.**     **DANCY WAS SEIZED WITHIN THE MEANING OF THE FOURTH AMENDMENT**

The Supreme Court has long held that traditional arrests require probable cause. Draper v. United States, 358 U.S. 307 (1959). It is possible that the officer can so restrain the liberty of the defendant that he has in effect made an arrest, irrespective of the officer's subjective intentions. See Dunaway v. New York, 442 U.S. 200, 212-13 (1979). The conventional method of classification in respect to such detentions consists

3

of asking whether "a reasonable man in the suspect's position would have understood his situation," in the circumstances then obtaining, to be tantamount to being under arrest. United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994), citing Berkemer v. McCarty, 468 U.S. 420 (1984). This is an objective test: the only relevant inquiry is how a reasonable man in the suspect's shoes would have understood his situation; the subjective beliefs held by the seizing officer or the person being seized are not germane. See United States v. Trueber, 238 F.3d 79, 93 (1st Cir. 2001)

Here, Officer Reardon reports observing a black male shooting a firearm into the air. See Ex. A. Reardon then believed that the individual shooting entered "Boomers Bar" only because he did not see the black male flee the area. See id. After backup arrived Reardon entered the front door of the establishment, while other officers entered the rear. Then Reardon reports that Trooper Walls, who entered through the rear, "observed William Dancy fitting the description, just inside the door walking towards them…." See id. Dancy was then immediately grabbed by Trooper Walls and taken to the ground. See id. At the point Dancy was grabbed, he was being seized for purposes of arrest. A "reasonable man" in Dancy's shoes would have understood being grabbed by the officer circumstances to amount to no less than an arrest.

### B. THE OFFICERS DID NOT HAVE PROBABLE CAUSE TO ARREST DANCY

Probable cause only exists when "'the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.'" United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987), quoting Beck, 379 U.S. at 89. Courts consider the "totality of the circumstances,"

4

with the government bearing the burden of establishing that, at the time of the arrest, there was sufficient probability to allow an officer to reasonably conclude that a crime occurred. See United States v. Reyes, 225 F.3d 71, 75 (1st Cir. 2000) (citations omitted).

      Here, the facts available to the officers arresting Dancy were not sufficient to satisfy this standard. Officer Reardon reports that he observed a black male shoot a firearm into the air on the street. See Ex. A. This person was described as "having corn rolls, a gray hooded sweatshirt with writing on the front and dark blue jeans." See id. After loosing sight of this individual he "determined" that the individual must have entered "Boomers Bar." See id. Reardon also suggests that the suspect looked like another individual "David Taylor." According to Reardon, Tpr. Walls "observed Dancy fitting the description, just inside the door walking towards them." See id. Dancy is described as wearing dark blue jeans, a gray hooded sweatshirt with lettering on the front, and as having "corn rolls." See id. However, Dancy, unlike the individual earlier seen outside, was wearing a black leather jacket. In fact, Dancy is simply observed inside the bar, along with other patrons. He was inside the bar when seized, whereas the alleged shooting took place outside the bar; he was not wearing the same clothing as the shooter. Finally, at the time preceding his arrest, Dancy was not demonstrating any suspicious activity. See id. The totality of these circumstances simply do not demonstrate a sufficient "probability ….of criminal activity" to satisfy the probable cause requirement. See Beck, 379 U.S. at 91.

**CONCLUSION**

For the foregoing reasons, William Dancy respectfully requests that this Court suppress the fruits of the warrantless arrest.

Respectfully Submitted,
The Defendant William Dancy,
By his attorneys,


//S//Stephen Hrones
Stephen Hrones (BBO No. 242860)
Jessica D Hedges (BBO No. 645847)
HRONES, GARRITY & HEDGES LLP
Lewis Wharf -- Bay 232
Boston, MA  02110-3927
T)617/227-4019

**CERTIFICATE OF SERVICE**

I, Stephen Hrones, hereby certify that, on this the 8th day of August, 2005, I caused to be served a copy of the foregoing DEFENDANT WILLIE DANCY'S MEMORANDUM IN SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE, where unable to do so electronically, via United States First-Class Mail, postage prepaid to all counsel of record in this matter.

//S//Stephen Hrones
Stephen Hrones

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Crim. No. 04-010387-RGS |
| v. ) | |
| ) | |
| WILLIE DANCY, ) | |
|     Defendant ) | |
| ) | |
| ) | |

**DEFENDANT DANCY'S NOTICE OF FILING**

    Now comes the Defendant, Willie Dancy, and hereby gives notice that the following exhibits have been hand filed at the Clerk's Office:

1. Exhibit A to Defendant's Memorandum in Support of his Motion to Suppress Evidence, the police report of Detective Reardon.

        Respectfully Submitted,
        The Defendant William Dancy,
        By his attorneys,


        //S//Stephen Hrones
        Stephen Hrones (BBO No. 242860)
        Jessica D Hedges (BBO No. 645847)
        HRONES, GARRITY & HEDGES LLP
        Lewis Wharf -- Bay 232
        Boston, MA  02110-3927
        T)617/227-4019

**CERTIFICATE OF SERVICE**

    I, Stephen Hrones, hereby certify that, on this the 8th day of August, 2005, I caused to be served a copy of the foregoing DEFENDANT WILLIE DANCY'S NOTICE OF FILING, where unable to do so electronically, via United States First-Class Mail, postage prepaid to all counsel of record in this matter.

        S//Stephen Hrones
        Stephen Hrones