UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
                                  )    CRIMINAL NO. 04-10387-RGS
          v.                      )
                                  )
                                  )
WILLIE DANCY,                     )
                                  )
          Defendant.              )

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The United States of America, by and through its attorneys, Michael J. Sullivan, United States Attorney, and Assistant U.S. Attorney Antoinette E.M. Leoney, submits this memorandum of law in opposition to Defendant's Motion to Suppress Evidence in the above-captioned matter.

Defendant Willie Dancy ("Dancy") argues for the suppression of a .22 caliber handgun and its ammunition found on his person by Officers of the Brockton and Massachusetts State Police Departments following the public discharge of a firearm. (See Def.'s Motion to Suppress at 1). Dancy avers that the discovery of his sidearm and ammunition was the result of a seizure that instantaneously developed into a *de facto* arrest, and that this arrest was illegal for lack of probable cause. (See Id. at 3). As such, he argues, the resulting evidence should be subject to suppression under the rubric of the exclusionary sanction. (See Id.).

Dancy's flimsy arguments run counter to both the facts and

governing case law, as his arrest by expert law enforcement personnel was firmly grounded in probable cause.   The reasonable belief that Dancy had committed a crime minutes before his arrest sprang from reliable and accurate information.

Assuming, arguendo, as Dancy puts forth, that his arrest was for some reason *not* supported by probable cause, his seizure was a valid <u>Terry</u> stop that did not rise to the level of a de facto arrest.   This brief investigatory detention did not exceed the permissible levels of a <u>Terry</u> intrusion.   The police clearly acted reasonably under the circumstances, as any interference with Dancy's Fourth Amendment rights was justified given the overarching safety risks faced by the officers.   The discovery of a sidearm and ammunition was the factual result of admirable police work.   Dancy's Motion to Suppress Evidence should thus be denied by this Court.

<u>FACTUAL SUMMARY</u>[1]

At approximately 9:00 pm on December 8, 2004, plain-clothed Detective Mark Reardon (Det. Reardon) of the Brockton Police Department was stopped in an unmarked car at a traffic signal at the intersection of Main Street and Perkins Avenue in Brockton, Massachusetts.   (<u>See</u> Exhibit A).   Det. Reardon, facing south on

---

[1]The factual summary is based on the attached exhibits, which are denoted here as Exhibits A through J. The government also anticipates that these facts will be elicited at any suppression hearing, as well as, at trial.

Main St., noticed a black Mercedes-Benz in the parking lot of the Gas Depot located across Perkins Ave. with several males around the vehicle. (See Id.). Because Main St. in Brockton is considered a "high-crime" area by local law enforcement officers, Det. Reardon observed the scene with interest and began to enter the license number of the Benz into his computer while slowly turning left onto Perkins Ave. Det. Reardon then noticed a black male, whose gait suggested that he was "being chased or was chasing someone," moving westerly on Perkins Ave. (See Id.).

The man passed Det. Reardon's driver-side window and raised a "dark-colored, large-frame semi-auto from his side," pointing it at the Mercedes as it sped out of the Gas Depot and away from the gunman. (See Id.). Det. Reardon was now observing the scene while driving slowly adjacent to the black male on Perkins Avenue. The black male gunman seemed "enraged" at the Mercedes' departure; he took several steps easterly along Perkins Ave., then stopped and fired a shot from the sidearm into the air. (See Id.).

The shooter then continued briskly along Perkins Ave. as Det. Reardon called in the incident over his police radio, requesting assistance to apprehend a volatile triggerman carrying a loaded firearm.[2] (See Id.). His proximity to the suspect due

---

[2] The turret tape from the evening in question is unavailable; the Brockton Police Department experienced a two-week taping malfunction when this event occurred.

to the orientation of the car afforded Det. Reardon an excellent vantage point, allowing him to describe the man with particularity. He radioed that the suspect was a black male with a corn row hairstyle, dressed in a gray hooded sweatshirt with writing on the front and dark blue jeans. (See Id.).

The shooter then turned into an alleyway between buildings on Perkins Ave., where Det. Reardon lost visual contact. (See Id.). Det. Reardon had been close enough to the shooter to also make out some facial features, and he radioed the approaching cruisers dispatched as backup that the shooter looked "similar in appearance" to David Taylor, a known player in the Brockton drug and gun scene. (See Exhibits A, H). Det. Reardon then turned left onto Montello Street to intercept the shooter. Failing to observe the male flee the area, Det. Reardon took up a vantage point behind Boomer's Bar (Boomer's), an establishment notorious to local law enforcement for its clientele. (See Exhibit A). Many of Brockton's drug and gun players were known to frequent the bar; Det. Reardon determined the shooter had entered Boomer's. (See Id.).

Det. Reardon and the officers arriving to back him up were members of a close-knit group of Brockton and State Police firearms, drug and gang specialists. Just prior to this incident, these officers had finished having dinner together; within minutes of the shooting, Det. Reardon's colleagues and

4

other officers surrounded the scene in several cruisers.
Boomer's has one front entrance on Perkins Ave. and a rear point
of egress for the smoking area and the parking lot.

Officer Thomas Hyland (Officer Hyland) of the Brockton
Police Department, along with Massachusetts State Police Sgt.
Mark Kiley (Sgt. Kiley) and Trooper Frank Walls (Trp. Walls),
both of the State Police Gang Unit, entered the rear door. (See
Exhibit B). Trp. Walls was the first through the back door. He
saw Dancy, who matched Det. Reardon's description of the
triggerman, several feet away and walking towards him. (See
Def.'s Motion at 2). Upon seeing Trp. Walls, Dancy quickly
turned around evasively and attempted to flee. (See Exhibit A).

Trp. Walls moved swiftly. His experience dealing with armed
suspects, the information received from Det. Reardon, and also
fearing for the safety of himself, his fellow officers and the
patrons in the bar prompted him to immediately grasp the
suspected shooter from behind. (See Id.). Dancy began to
struggle. (See Id.). Trp. Walls instinctively grabbed the right
front pocket of Dancy's leather jacket and instantly felt a
firearm, stating "Gun!" to the other officers. (See Id.). Dancy
continued to resist, yelling "Get off me nigger, I ain't got no
gun!" as Officer Hyland moved to assist Trp. Walls in subduing
the volatile suspect.

Dancy "repeatedly" attempted to pull the gun out of his

jacket during the altercation and tried to hand it to a
bystander, later identified as Michael Bourne (Bourne), who was
standing nearby. (See Id.). However, Bourne refused the weapon
and it dropped to the floor. (See Id.). Trp. Walls and Officer
Hyland finally brought Dancy down, who still resisted their
verbal and physical commands to submit. Dancy continued to
fight, managing to wriggle out of his jacket and stand up;
moments later he received a one to two second burst of pepper
spray from Officer Michael Cesarini (Officer Cesarini), inducing
submission.[3] (See Exhibit C).

Officer Cesarini and Det. Reardon had entered through the
front door, and moved quickly toward the rear of the bar while
the situation with Dancy unfolded. (See Id.). Another
bystander, later identified as Kevin Jones (Jones), stood next to
a pool table near the altercation. As Officer Cesarini
approached the rear of the bar, he noticed a dark colored 9mm
semi-automatic handgun sitting on the floor next to Jones. (See
Id.) Officer Cesarini ordered Jones to the ground while Officer
Hyland and Trp. Walls grappled with Dancy on the other side of
the pool table. (See Id.).

Officer Hyland, on the floor with Dancy, saw the 9mm slide
towards him underneath the pool table, apparently pushed by

---

[3]Dancy was shortly thereafter administered a "bio-shield to
neutralize" the pepper spray. (See Exhibit D).

6

Jones, who was the only individual on the other side of the
table.  (See Exhibit B).  Det. Reardon and Officer Cesarini
ordered Jones to show them his hands.  Jones refused, stating
"I'm just shooting pool."  (See Exhibit A).  Det. Reardon again
ordered Jones to show his hands and Jones attempted to pull away.
Before turning to aid Det. Reardon, Officer Cesarini quickly
retrieved the 9mm and placed it on the pool table.  (See Id.).

After quickly helping subdue Jones, Officer Cesarini pointed
to the weapon on the pool table, and then administered pepper
spray to Dancy.  (See Exhibit C).  Officer Cesarini's gesture
prompted Officer Hyland to secure the Smith & Wesson 9mm, which
had a live round in the chamber ready to fire and three live
rounds in the clip. (See Exhibit B).  With Dancy finally secured,
Officer Hyland then recovered the .22 caliber pistol that fell
from Dancy's jacket during his resistance.  This North American
Arms .22 caliber five-shot revolver was loaded with one live
round of rim fire Super X ammunition.  (See Indictment.)  The
bystander, Bourne, to whom Dancy tried to hand his weapon, became
verbally abusive to the officers, and was also placed under
arrest.  (See Exhibit A).

After Dancy, Jones and Bourne were in custody, the officers
secured the scene.  Det. Reardon immediately confirmed that Dancy
was the shooter he had witnessed discharge a dark-colored, large-
frame 9mm semi-automatic handgun only minutes earlier.  (See

7

Id.).  Officer Scott Wilbur located a spent 9mm shell casing outside the rear door of Boomer's, and spoke with Boomer's bartender Alicia Costa-Burton, who stated that Dancy had "ran in...right before" the officers arrived on the scene.  (See Id.).

The three individuals arrested at Boomer's that night were subsequently booked at the Brockton police station, where a Polaroid photograph and arrest photograph of Dancy were taken. (See Exhibits E, I).  The Polaroid photograph clearly shows Dancy with corn rows, a gray hooded sweatshirt with writing across the chest and dark jeans.  (See Exhibit E).

Jones and Dancy were processed first and placed in closely-situated holding cells while Bourne was being booked.  State Trooper Erik Telford (Trp. Telford) was present in the cell block area behind a nearby wall and overheard Dancy and Jones discussing the events.  (See Exhibit F).  Trp. Telford noted that although neither man had been informed of the type or brand of handgun with which they were charged, Jones said to Dancy: "Yo Will, you know the *Smith & Wesson* don't take no prints."  (See Id.)(emphasis added). Even though neither man was advised which weapon each would be charged with, Jones then stated to Dancy: "Will, I'm getting charged with the big one and you're getting charged with the little one...".  Dancy replied: "*I know*...and you think it's my fault because *I had to go do that shit*[.]" (See Id.)(emphasis added).  Dancy said to Jones that the officers

8

"found the burners [the guns] under the pool table, not in anyone's hand.  They don't have shit."  (<u>See</u> <u>Id</u>.).

Both weapons were later examined and test fired by Massachusetts State Police Ballistics Expert Trooper Michael Arnold (Trp. Arnold), who found both to be within the meaning of and as defined by the Massachusetts statutory parameters of firearms and ammunition.  Trp. Arnold also positively matched the discharged 9mm cartridge shell found outside Boomer's by Officer Wilbur to the Smith & Wesson, 9mm caliber, found near Dancy and Jones.  (<u>See</u> Exhibit G).

Finally, Dancy is 30 years old, and has a lengthy criminal history record.  (<u>See</u> Exhibit J).

ARGUMENT

The handgun and ammunition seized from the person of Willie Dancy on December 8, 2004 following the public discharge of a firearm should not be suppressed because the arresting officers acted on the direct observations of an experienced fellow detective.  At the time of Dancy's arrest, the officers possessed accurate and sufficient information to warrant a reasonable belief that Dancy was the shooter.  The arrest was thus solidly founded on probable cause.

In the alternative, even if, arguendo, the officers somehow lacked such probable cause to arrest Dancy immediately, the encounter began as a facially valid <u>Terry</u> stop.  During the

9

rapidly-developing situation, officers had legitimate reasonable suspicion that Dancy was the shooter. The momentary intrusion into Dancy's privacy paled in comparison to the safety risk perceived by the officers. The seizure, effectuated in the split-second before the officers obtained probable cause by feeling Dancy's handgun, did not exceed the permissible scope of a <u>Terry</u> stop. It thus did not transform into a de facto arrest requiring probable cause.

Both lines of inquiry run headlong into the conclusion that there is no plausible factual or legal support for Dancy's claim of illegal police activity. His motion to suppress should, therefore, be denied.

I.   AT THE TIME OF DANCY'S ARREST, RESPONDING OFFICERS POSSESSED EVIDENCE SUFFICIENT TO WARRANT A REASONABLE BELIEF THAT DANCY WAS THE SHOOTER, THUS SUPPLYING PROBABLE CAUSE FOR THE ARREST.

Under the rubric of the Fourth Amendment, it is well established that warrantless arrests require probable cause as against the arrestee, and such felony arrests may be executed in a public place. See <u>United States v. Watson</u>, 423 U.S. 411 (1976). Without probable cause, arrests circumventing the impartiality requirements for a warrant are considered beyond the scope of legitimate police activity. See <u>Wong Sun v. United States</u>, 371 U.S. 471, 482 (1963). The constitutional validity of the discovery of evidence is coextensive with the validity of the attendant warrantless arrest. See <u>Beck v. Ohio</u>, 379 U.S. 89, 91

10

(1964).  Evidence seized as a direct factual result of illegitimate police activity is deemed the "fruit" of such illegality and, as such, may not be used against the arrestee. See Wong Sun at 484-485 (citing Silverthorne Lumber Co. v. United States, 251 U.S. 385 (1920)).

Fourth Amendment reasonableness standards govern the concurrent analyses of a warrantless arrest and the resulting evidence.  See Beck, 379 U.S. at 91.  These analyses hinge on the existence probable cause.  See Id.  If such probable cause exists, "the arrest, though without a warrant, [is] lawful," and the resulting evidence admissible.  Watson, 423 U.S. at 417 (quoting Draper v. United States, 358 U.S. 307, 310 (1959)).

Identifying probable cause turns on the "assessment of probabilities in particular factual contexts [that are] not readily...reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983).  That probable cause is a "fluid concept," Id., was echoed by Chief Justice Rehnquist of the Supreme Court, who stated that "articulating precisely what...'probable cause' mean[s] is not possible."  Ornelas v. United States, 517 U.S. 690, 695 (1996).  The existence of probable cause is informed, then, by whether the "facts and circumstances within [a police officer's] knowledge...were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense."  Beck, 379

11

U.S. at 91.

Due to the rejection of formulaic judicial constructions of probable cause, courts reviewing warrantless arrests apply a totality of the circumstances test to determine whether the arrest was founded on probable cause.  See United States v. Reyes, 225 F.3d 71, 75 (1st Cir. 2000)(citation omitted).  See also Maryland v. Pringle, 540 U.S. 366, 371 (2003); United States v. Fiasconaro, 315 F.3d 28, 35 (1st Cir. 2002); United States v. Figueroa, 818 F.2d 1020, 1024 (1st Cir. 1987).  A court is expected to examine the totality of "events leading up to [an] arrest," and, from the standpoint of an objectively reasonable officer, review these facts in light of the *probability* that a suspect was engaged in criminal activity.  See Pringle, 540 U.S. at 371 (quoting Ornelas, 517 U.S. at 696).  The government, in providing evidence to satisfy this test, is required not to present "evidence sufficient to convict[,] but *merely enough to warrant a reasonable belief"* that a suspect was engaging in criminal activity.  Reyes, 225 F.3d at 75 (emphasis added).

Reliability of information also plays into the totality of the circumstances test.  See e.g. Gates, 462 U.S. 213 (probable cause based on detailed informants' tip that was independently verified by officers).  In Draper the Supreme Court stated that since the information at issue was received from a known and reliable source, and since the arresting officers personally

verified innocent information contained in the tip, the arrest
was surely based on probable cause.  See Draper, 358 U.S. at 313.
Even the fact that the arresting officers themselves did not
observe the suspect engage in any overtly criminal behavior could
not persuade the Court otherwise.  See Id.

In the instant case, an analysis of the totality of the
circumstances surrounding Dancy's arrest indicates that his reach
for the exclusionary sanction is baseless.  Trooper Walls'
reasonable belief that Dancy was the shooter Det. Reardon had
observed minutes earlier is unshakeable.  The totality of the
circumstances here informing a probable cause analysis includes
1) the high-crime environment in which the situation developed;
2) the expertise of the officers involved; 3) the accuracy and
particularity of the shooter's description; 4) the gunman's
flight to Boomer's Bar; and 5) the dire safety risk posed by an
armed and dangerous suspect, who didn't hesitate to point and
shoot his gun.

Det. Reardon is an experienced and savvy officer of the law
with years of investigation and field experience, and his
knowledge of Brockton and its criminal elements is unquestioned.
The detailed description of the gunman was drawn from his
sustained sight line of a nearby suspect.  Det. Reardon's instant
post-arrest confirmation of Dancy as the Perkins Ave. shooter
bears out the solidity of his observation.  Contrary to what the

13

defendant would have us believe, a measured and accurate description was radioed by Det. Reardon to his fellow officers, one precise and effective enough for Trp. Walls to immediately recognize Dancy with a glance when entering Boomer's Bar. A comparison of the radioed description and Dancy's post-arrest Polaroid photo taken at the police station confirms Det. Reardon's accuracy. (See Exhibit E).

Furthermore, Trp. Walls received the shooter's description only minutes before Dancy's arrest from a detective whose expertise he knew. Trp. Walls was obviously justified in relying on this information in reasonably forming his belief that Dancy was the shooter. Entering Boomer's Bar, Trp. Walls instantly matched the description of an armed and dangerous gunman to Dancy. That Trp. Walls immediately grabbed Dancy was an instinctive reaction in the face of such a dangerous and rapidly developing situation. Upon seeing the officer, this suspect, on what Trp. Walls believed to be armed with a loaded handgun, turned abruptly and attempted to flee. Such evasive maneuvers could not but further confirm his belief that Dancy was the gunman. Further, Trp. Walls based his restraint of Dancy not only on matching an accurate and reliable description to Dancy and his evasiveness, but also on the high probability that Dancy posed an imminent and deadly risk to Trp. Walls himself, the other officers and the patrons in the bar. Given the known

14

willingness of the suspect to publicly discharge a firearm, Trp. Walls' actions were surely calculated to prevent both intentional and accidental bloodshed inside Boomer's Bar and on the streets of Brockton.

By his motion, Dancy implies a case of mistaken identity and impugns the basis for probable cause by emphasizing that as the shooter darted through the alley way towards Boomer's, Det. Reardon lost sight of him.  This is a spurious insinuation in light of Det. Reardon's immediate confirmation that Dancy was the shooter once inside Boomer's.  Even without such post-arrest rationalizations, it was wholly reasonable to determine that the shooter had entered Boomer's Bar given Det. Reardon's observation and knowledge of the surrounding area.

As a veteran of the Brockton police force familiar with the area, Det. Reardon did not see the shooter flee the block.  He also knew that Boomer's Bar was a gathering place for individuals involved in the Brockton drug and gun scene.  The gunman was wearing only a sweatshirt when he fired the shot; Boomer's Bar was the logical source for a man without a winter jacket in the Massachusetts December night.  It was surely reasonable for Det. Reardon to form a belief that after a jaunt outside to menace the men in the Mercedes, the shooter returned immediately to the warmth of Boomer's Bar and his jacket.  That Dancy was arrested inside Boomer's Bar wearing a leather jacket right after he ran

15

through the door lends further support for this belief.

Dancy also argues that notwithstanding Det. Reardon's pronouncement that the shooter "looked similar" to David Taylor, the description and identification were in fact not accurate. This is defused, however, with a cursory comparison of photographs of the two men, which allows their uncanny resemblance to spring forth. (Compare Exhibits H and I). Moreover, it was *Dancy* who was found inside Boomer's Bar armed with a handgun, *not* David Taylor.

Det. Reardon's expertise, the accuracy of his description, and its match to Dancy clearly indicate that Dancy's arrest was supported by probable cause. The temporal and spacial proximity of Dancy's arrest to the shooting also militate toward this conclusion. The above reasons, taken within the framework of a totality of the circumstances, demonstrate that probable cause existed, and as such Dancy's motion to suppress evidence should be denied.

II.  EVEN IF DANCY'S ARREST WAS NOT SUPPORTED BY PROBABLE CAUSE, HIS SEIZURE BY POLICE WAS A VALID TERRY STOP.

For Fourth Amendment purposes, a seizure occurs when a police officer restrains an individual's freedom to walk away from an interaction. See Terry v. Ohio, 392 U.S. 1, 16 (1968). Such seizures made without probable cause, previously considered unreasonable, were found to be legitimate in Terry. See Id. Police officers are permitted to conduct brief detentions and

pat-frisks of persons against whom they have a reasonable
suspicion of criminal activity.  See Terry, 392 U.S. at 21-22;
United States v. Maguire, 359 F.3d 71, 76 (1st Cir. 2004).
Reasonable suspicion is a considerably less demanding standard
than probable cause.  See Illinois v. Wardlow, 528 U.S. 119, 123
(2000)(citing United States v. Sokolow, 490 U.S. 1, 7 (1989)).
The basis for this reasonable suspicion must be grounded in "more
than [an] inchoate and unparticularized...hunch."  Maguire, 359
F.3d at 76 (quoting Sokolow, 490 U.S. at 7)(internal quotation
marks omitted).

The propriety of an investigatory detention depends on
"whether the officer's actions were justified at their
inception," United States v. Trueber, 238 F.3d 79, (1st Cir.
2001)(citations and internal quotation marks omitted).  Also
scrutinized is whether "the scope of the stop was reasonable
under the circumstances." Maguire, 359 F.3d at 77 (citation
omitted).  Initial justification for Terry stops can be based on
"specific and articulable facts which, taken together with
rational inferences derived from those facts, reasonably
show...the stop was warranted." Id.

Here, Trp. Walls had a detailed description of an armed
suspect willing to use his firearm.  He was also cognizant that
both the area and, in particular, the bar he was entering was
rife with individuals involved in the narcotics trade.  Trp.

Walls entered Boomer's Bar and saw Dancy walking towards him.  It is clearly logical that Trp. Walls instantly formed a reasonable suspicion that Dancy was the dangerous gunman: he matched Det. Reardon's detailed description given and received over the radio only minutes earlier.

The evasive movement of Dancy suggested flight and heightened Trp. Walls' suspicion towards him.  It is well established that nervous and evasive behavior lends weight to an officers' formulation of reasonable suspicion.  Id. (citing United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975)).  Instead of defusing Trp. Walls' reasonable suspicion that he was the gunman, Dancy increased it by engaging in evasive maneuvers suggesting attempted flight.  Further, in Wardlow, the Supreme Court held that unprovoked flight, by a suspect in a high-crime area, *upon seeing the police* was alone justifiable grounds on which to form reasonable suspicion.  See 528 U.S. at 124.  In light of such overwhelming evidence and precedent, Dancy apparently does not contest that Trp. Walls had legitimate reasonable suspicion to seize him.

III. DANCY'S SEIZURE DID NOT EXCEED THE PERMISSIBLE BOUNDARIES OF AN INVESTIGATORY DETENTION AND DID NOT RISE TO THE LEVEL OF A DE FACTO ARREST REQUIRING PROBABLE CAUSE.

Dancy focuses on the single frame of his seizure, attempting to render meaningless the motion picture of the situation.  He argues that in the instant between the seizure and when Trp.

18

Walls felt his sidearm, the interaction moved beyond the permissible boundaries of a <u>Terry</u> stop.  It is unquestioned that once Trp. Walls discovered Dancy's gun, probable cause existed to disarm and arrest him.  This split-second contact between officer and suspect before the firearm was discovered did not elevate the situation to a de facto arrest.  Dancy's claim to the contrary finds shelter in neither relevant case law nor common sense.

De facto arrest occurs either when a <u>Terry</u> seizure exceeds the scope of a normally permissible investigatory detention, or when a suspect is restrained in a manner associated with formal arrest.  <u>See</u> <u>Maguire</u>, 359 F.3d at 77.  Although there is no "scientifically precise formula that enables courts to distinguish between investigatory stops and de facto arrests," a court must evaluate the entirety of the circumstances leading up to the restraint of a suspect.  <u>Id</u>. (quotations and alterations omitted).  The relevant inquiry rests on "how a reasonable man in the suspect's position would have understood his situation." <u>Berkemer v. McCarty</u>, 468 U.S. 420, 441 (1984).

Dancy couches his argument that he "understood being grabbed by the officer...to amount to no less than an arrest" in the split-second physical contact administered by Trp. Walls.  Def.'s Motion at 4.  The First Circuit Court of Appeals roundly rejected this type of argument in <u>Maguire</u>.  They stated that winnowing the scope of inquiry to "the discrete moment" of seizure by physical

19

contact "without considering the totality of the circumstances" was to commit error.  See Maquire, 359 F.3d at 77-78.

In spite of this, Dancy claims that the physical nature of his seizure transformed it into a de facto arrest.  Physicality during a Terry stop does not alone bring arrest, as an officer touching a suspect "merely establishes that a seizure occurred." United States v. Zapata, 18 F.3d 971, 977 (1st Cir. 1994).  The Zapata court stated also that an "investigatory stop necessarily carries with it the right to use some degree of physical coercion" against the suspect.  18 F.3d at 976-977 (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).  The validity of such physical coercion during a Terry stop is determined by a totality of the circumstances analysis, and even the forced handcuffing of a suspect does not automatically elevate an investigatory detention to a de facto arrest.  See e.g. Tom v. Voida, 963 F.2d 952, 958 (7th Cir. 1992); United States v. Taylor, 716 F.2d 701, 708 (9th Cir. 1983).  In Tom, even though he did not appear to be dangerous at the time, application of physical force to the suspect was deemed reasonable due to his evasive actions in a high-crime area.  See 963 F.2d at 958. Axial to the justification of physical contact is "the severity of the crime at issue [and] whether the suspect poses an immediate threat to the safety of the officers or others."  Id. (quoting Graham, 490 U.S. at 394-396).

20

The Maguire court, relying in part on both Tom and Graham, found that even though police officers wrestled Maguire to the ground, their actions did not constitute a de facto arrest. See 359 F.3d at 78. Examining the factual context of the case, the court justified this heightened level of physical contact because the officers were "attempting to ensure their own personal safety." Id. The investigating officers were thus "entitled" to apply physical force in their search for weapons "if they felt their safety was threatened." Id. Although the officers testified that they did not wrestle Maguire to the ground until they observed a "black handled item" in his waistband, the court declined to allow this single point to govern their analysis of the totality of the circumstances. Id.

Given this, it is implausible to argue that Trp. Walls' seizure of Dancy constituted a de facto arrest. Trp. Walls initiated physical contact for the express purpose of ensuring not only his personal safety, but that of his fellow officers and the patrons of Boomer's. Entering the bar, Trp. Walls was confronted with an individual matching the description of a gunman who immediately took evasive measures. Trp. Walls was clearly permitted to physically restrain Dancy as he did. Aside from the legal standards to the contrary, it would be dangerous precedent for this Court and society to deny Trp. Walls the opportunity to reasonably ensure the safety of himself and others

21

on the scene.

Dancy's allegations that his split-second seizure instantly vaulted beyond the scope a valid <u>Terry</u> stop and became a de facto arrest are thus unsupportable.  Once past this, Trp. Walls' instantaneous discovery of Dancy's sidearm renders moot any protestations regarding probable cause for arrest.

<u>CONCLUSION</u>

WHEREFORE, for the above reasons the government respectfully requests that this Court deny the Defendant's Motion to Suppress Evidence.

                                    MICHAEL J. SULLIVAN
                                    United States Attorney
                          By:

                                     /s/Antoinette E.M. Leoney
                                    ANTOINETTE E.M. LEONEY
                                    Assistant U.S. Attorney
Dated: September 9, 2005            (617) 748-3103

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served upon the person listed below a copy of the foregoing document electronic court filing:

        Stephen Hrones, Esq.
        Jessica Hedges, Esq.
        Hrones, Garrity & Hedges, LLP
        Lewis Wharf - Bay 232
        Boston, MA 02109

This 9th day of September, 2005.

                                     /s/Antoinette E.M. Leoney
                                    ANTOINETTE E.M. LEONEY
                                    Assistant U.S. Attorney

                                    22

# EXHIBIT  A

| OBTN TBRO000040134 | **BROCKTON POLICE DEPARTMENT** *Arrest Booking Report* | Case No. 04015608 |

## ARRESTEE

| Arrestee Name (Last, First, Middle Initial) DANCY, WILLIE L. | Arrest No. 00021348 | Social Security No. 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 | Caution COMBATIV |

| Address 80 BARTLETT ST 1ST, BROCKTON, MA | Scars, tattoos, etc. NONE |

| Sex M | Race B | Height 509 | Weight 170 | Hair BLK | Eyes BRO | Build MED | Complexion DARK | Marital Status SINGLE | D.O.B. 01/31/1975 | Age 29 | Place of Birth BOSTON |

| Father's Name WILLIE ROBINSON | Mother's Maiden Name DANCY,DEBORAH | Wife's Maiden Name | Husband's First Name | Weekly Wage |

| Occupation BARBER | Employer UNEMPLOYED | Alias/Nickname 1 DASHAWN |

| Alias/Nickname 2 COOPER | Alias/Nickname 3 COOP |

## CHARGE

Charge(s) | MGL Chapter/Section | Warrant Number

1) UNL DISCH 500'DWEL — 269-12E
2) UNL CARRY FIREARM  ( 1 CTS) — 269-10A
3) UNL POS F/ARM AMMO ( 2 CTS) — 269-10
4) DISORDERLY PERSON — 272-53
5) RESISTING ARREST — 268-32B
6) WARRANT (LOCAL) — 0415CR007159
7) WARRANT (LOCAL) — 0415CR007160
8) REC STLN PROPERTY — 266-60

*PSN*

| Arrest Date 12/08/2004 | Time 22:15 | Arrest Location 26/PERKINS AV | Arresting Officer 1 REARDON MARK | Arresting Officer 2 HYLAND, THOMAS | Domestic Violence? NO |

## CONTROL

| Booking Date 12/08/2004 | Time 21:49 | Booking Officer LOBO, JOSE | Cell No. 01 | Matron | Police Department on Warrant BROCKTON |

| Rights given by DIBARI, ROBERT F | Visible Injuries? NO | Comments OC WAS USED ON DEF |

| Searched by KERR, CHRISTOPHER | No. Codefendants 2 | Codefendant(s) Name(s) MICHAEL BOURNE, KEVIN JONES |

## JUVENILE

| Person to notify | Relationship | Address | Telephone No. | Date/time notified |

| Probation Officer | Release or Hold | Notified by | Juvenile released to (Signature) |

## RELEASE

I was informed of my right to remain silent, to use a telephone, at my own expense, for the purpose of communicating with family or friends, to arrange bail or to call an attorney | Arrestee Signature

| Telephone used? (yes or no) | Bail Amount | Date/time Released | Released by |

001 (A)

# BROCKTON POLICE DEPARTMENT
## Arrest Booking Report

| OBTN | | Case No. |
|---|---|---|
| TBRO000040135 | | 04015608 |

## ARRESTEE

| Arrestee Name (Last, First, Middle Initial) | | Arrest No. | | Social Security No. | | Caution |
|---|---|---|---|---|---|---|
| JONES, KEVIN L. | | 00039233 | | ▮▮▮▮▮ | | COMBATIV |

| Address | | Scars, tattoos, etc. |
|---|---|---|
| 263 GREEN ST #1, BROCKTON, MA | | |

| Sex | Race | Height | Weight | Hair | Eyes | Build | Complexion | Marital Status | D.O.B. | Age | Place of Birth |
|---|---|---|---|---|---|---|---|---|---|---|---|
| M | B | 508 | 145 | BLK | BRO | THN | DARK | SINGLE | ▮▮▮ | 25 | STOUGHTON MA |

| Father's Name | Mother's Maiden Name | Wife's Maiden Name | Husband's First Name | Weekly Wage |
|---|---|---|---|---|
| KEVIN GABOUREL | JONES | | | 300 |

| Occupation | Employer | Alias/Nickname 1 |
|---|---|---|
| SALESMEN | NEXTEL CENTRE ST | JONES, DESMOND |

| Alias/Nickname 2 | Alias/Nickname 3 |
|---|---|
| | |

## CHARGE

| Charge(s) | MGL Chapter/Section | Warrant Number |
|---|---|---|
| 1) UNL POSS FIREARM | 269-10H | |
| 2) UNL POSS AMMUNITIO | 269-10O7 | |
| 3) DISORDERLY PERSON | 272-53 | |
| 4) REC STLN PROPERTY | 266-60 | GUN |
| 5) POSS CS CLASS D | 94C-34 | |

*PSN*

| Arrest Date | Time | Arrest Location | Arresting Officer 1 | Arresting Officer 2 | Domestic Violence? |
|---|---|---|---|---|---|
| 12/08/2004 | 22:15 | 26/PERKINS AV | REARDON MARK | HYLAND, THOMAS | NO |

## CONTROL

| Booking Date | Time | Booking Officer | Cell No. | Matron | Police Department on Warrant |
|---|---|---|---|---|---|
| 12/08/2004 | 23:29 | LOBO, JOSE | 4 | | |

| Rights given by | Visible Injuries? | Comments |
|---|---|---|
| MCCABE LEON  36T  BD | NO | |

| Searched by | No. Codefendants | Codefendant(s) Name(s) |
|---|---|---|
| CESARINI, MICHAEL | 2 | DANCY, WILLIE, BOURNE MICHAEL |

## JUVENILE

| Person to notify | Relationship | Address | Telephone No. | Date/time notified |
|---|---|---|---|---|
| | | | | |

| Probation Officer | Release or Hold | Notified by | Juvenile released to (Signature) |
|---|---|---|---|
| | | | |

## RELEASE

| I was informed of my right to remain silent, to use a telephone, at my own expense, for the purpose of communicating with family or friends, to arrange bail or to call an attorney. | Arrestee Signature |
|---|---|
| | |

| Telephone used? (yes or no) | Bail Amount | Date/time Released | Released by |
|---|---|---|---|
| | | | |

001 (B)

```
-------------------------!                        !-------------------------!
  Offense/Incident         !                      ! Case No.                !
            .              !   BROCKTON POLICE DEPARTMENT                    !
  UNL CARRY FIREARM        !       ARREST REPORT  !      04015608           !
-------------------------------------------------------------------------------!
Offense Date and Time ! Day ! Arrest Date and Time ! Day ! Domestic Violence?!
12/08/2004   21:14    ! Wed ! 12/08/2004   21:30   ! Wed !       NO          !
-------------------------------------------------------------------------------!
Location of Offense      ! Apt ! Sector ! Wrd ! Prec ! Arresting Officer      !
26/PERKINS AV            !     !   SE   !  4  !  4B  ! REARDON MARK           !
-------------------------------------------------------------------------------!
Defendant's Name         ! Sex ! Race ! Hgt ! Wgt ! D.O.B.      !    A/J      !
DANCY       WILLIE    L  !  M  !  B   ! 509 ! 170 ! 01/31/1975  !  ADULT      !
-------------------------------------------------------------------------------!
Defendant's Address                     ! Social Security No.                 !
30 BARTLETT ST 1ST BROCKTON MA          !    031746850                        !
-------------------------------------------------------------------------------!
Offense(s) Charged    A !                     B !                      C !
UNL CARRY FIREARM       ! UNL POSS AMMUNITIO    ! UNL DIS F'ARM CITY      !
-------------------------------------------------------------------------------!
                      D !                     E !                      F !
UNL CARRY FIREARM       ! UNL POSS AMMUNITIO    !                         !
-------------------------------------------------------------------------------!
Weapon(s) Used          ! Location of Arrest                               !
HANDGUN                  ! 26/PERKINS AV  BOOMERS                          !
-------------------------------------------------------------------------------!
Co-Defendant            ! Address                              ! D.O.B.     !
JONES       KEVIN     L ! 263 GREEN ST #1 BROCKTON MA          !            !
-------------------------------------------------------------------------------!
Co-Defendant            ! Address                              ! D.O.B.     !
BOURNE      MICHAEL   J ! 165/CHATHAM WEST DR BROCKTON M       !            !
-------------------------------------------------------------------------------!
Type of Property  ! Make      ! Model   ! Color 1 ! Color 2 ! Value         !
FIREARMS/ACCESSORI ! S&W      ! 908     !  BLK    !  GRY    ! $             !
-------------------------------------------------------------------------------!
Type of Property  ! Make      ! Model        ! Color 1 ! Color 2 ! Value    !
FIREARMS/ACCESSORI ! N AMER ARM ! .22 MAGNUM !  SIL    !         ! $        !
-------------------------------------------------------------------------------!
Type of Property  ! Make      ! Model   ! Color 1 ! Color 2 ! Value         !
DRUGS/ILLICIT     ! HERB      !         !  GRN    !         ! $             !
-------------------------------------------------------------------------------!
Witness 1               ! Sex ! Race ! D.O.B            !                    !
REARDON     MARK        !  M  !  W   !                  !                    !
-------------------------------------------------------------------------------!
Residence Address                  ! Res Telephone ! Bus Telephone          !
BROCKTON P.D                       !               ! 8975303                !
-------------------------------------------------------------------------------!
    Narrative:
-------------------------------------------------------------------------------!
       **SEE ATTACHED REPORT**
-------------------------------------------------------------------------------!
Signed under the pains & penalties of perjury. (Arresting Officer Signature) !
-------------------------------------------------------------------------------!
  Report Date   ! Supervisors Signature
  12-09-2004    !                                                  002
-------------------------------------------------------------------------------!
```



Detective Mark Reardon
Brockton PD - 8/9/05

100

# BROCKTON POLICE DEPARTMENT
## CRIMINAL INVESTIGATION DIVISION
### 508 941-0234

December 8, 2004

**Case #:**     **0401-5608**

**Charges:**     Unl Carrying Firearm (2 cts), Rec'v stolen prop (firearm), Unl
Poss ammo (2 cts), Unl Discharge F/A, Resisting arrest, Disorderly.

**Defendant's:**     Willie Dancy 01/31/1975

Kevin Jones ████████

Micheal Bourne ████████

**Narrative:**

While working in a plain clothes capacity, in an unmarked police vehicle. This
officer (Det Mark Reardon) was stopped at a red traffic light at the intersection of Main
St and Perkins Av. This officer's attention was directed to a Black Mercedes at the Gas
Depot gas pump with several males milling around the vehicle. As the light changed, I
was making a left turn, Easterly on Perkins Av while beginning to enter the Mercedes
plate number into my MDT. I then observed a black male running westerly on Perkins Av
towards Main St. The black males gait appeared that he was being chased or chasing
someone. As the black male passed my vehicle, I observed him raise a dark colored, large
frame semi-auto from his side and point it towards the black Mercedes which had just
sped off, westerly on South St. The black male appeared enraged at this and turned
around, walking back easterly on the north sidewalk of Perkins Av. The black male took
several steps, then raised the firearm with one hand and fired one round in the air. The
male continued walking as this officer called in the observations and description to
Brockton Police dispatch via radio. This officer observed the black male, described as
having corn rolls, a gray hooded sweatshirt with writing on the front and dark blue jeans.
The black male cut through between the large brick commercial building and a small
white building as I lost visual contact. Several units were dispatched to assist as this
officer then advised responding officers that knew David Taylor, that the party looked
similar in appearance. This officer took up a vantage point to the rear of the bar and did
not observe the black male flee the area and determined the black male had entered
Boomer's Bar located on Perkins Av. When sufficient backup arrived, Officer Cesarini
and this officer entered the front door of Boomers while Sgt Kiley, Tpr Walls and Officer
Hyland entered the rear door of the bar. Tpr Walls observed Defendant William Dancy
fitting the description, just inside the door walking towards them. As Dancy saw the

**003**

police, he turned around quickly and was grabbed by Tpr Walls. Dancy began to struggle and Tpr Walls grabbed the front right pocket of his black leather jacket and immediately felt a firearm, alerting "gun" to other officers. Dancy reached into the pocket and repeatedly attempted to pull the gun out while yelling, "Get off me nigger, I ain't got no gun!" Dancy struggled and pulled the cylinder of the gun out of his pocket and attempted to hand it off to defendant Bourne who refused it, dropping it to the ground. Dancy continued to fight and was directed to the floor as he wrestled out of his jacket and got up. Dancy was the administered a one to two second burst of O.C spray by Ofc Cesarini and finally secured by several officers and handcuffed. Tpr Walls then located a .22 cal Magnum, North American Arms Cor, a cell phone and one .22 super X round. In the right front pocket of Dancy's leather jacket. *Note: Dancy was wearing dark blue jeans, a gray hooded sweatshirt with lettering on the front and had corn rolls at the time of his arrest and was positively identified by this officer as the black male observed minutes prior firing the 9mm on Perkins Av. Dancy was the removed to the area just outside of the rear door and secured. Defendant Bourne began verbally assaulting Ofc Hyland and attempting to stir up the other patrons in the bar against the police. Bourne was placed under arrest at this time. Ofc Wilbur then located a spent 9mm casing to the right of the rear door. The casing and scene were photographed and packaged by Deputy Ballinger, then transferred to this officer.

During initial entry into the bar, this officer approached the altercation at the rear door and heard Ofc Cesarini state, "gun!" while pointing to defendant Jones. Ofc Hyland observed a black / gray 9mm slide under the pool table from the direction of Jones and secured by Cesarini. This officer ordered Jones to show me his hands and get on the floor. Jones refused and tightened up stating, "I'm just shooting pool." I again ordered jones to comply which he refused and attempted to pull away. Jones was guide, supported and directed to the floor as Cesarini handed the 9mm to Hyland, while he assisted this officer. Jones was finally secured and handcuffed at this time. Hyland made the weapon safe and secured the Smith & Wesson model # 908, ser# VJC5543, magazine with three live rounds and one live round in the chamber ready to fire. Hyland also recovered the .22 cal frame and cylinder which was loaded with one live round. The firearms and ammo were transported to the station by Hyland and Cesarini and logged in as evidence by Det. Gurney at the station. This officer examined the spent 9mm round located outside the rear door and determined that it matched the round in the chamber, F.C 9MM LUGER.

An NCIC check on the Smith & Wesson 9mm, ser # VJC5543 showed the firearm to be stolen from Brockton, Ma on 07/23/2004 in a residential house break, the firearm was reported stolen and issued BPD case # 0400-9278.

Ofc Wilbur spoke with the bartender, Alicia Costa-Burton, ███████ who stated that the black kid that we arrested in the gray sweatshirt ran in the front door right before we came in. Alicia identified Dancy to Ofc Wilbur at that time.

The three defendants were booked at the Brockton police station, advised of rights and allowed to use the telephone w/o incident at this time. During the booking inventory process, OFc Cesarini located a 'dime bag' of suspected marijuana in defendant Jones'

pocket. The evidence was seized and logged in by Det Gurney. Tpr Walls then had conversation with Dancy regarding his leather jacket. Dancy had already been placed in his cell and advised of rights. Walls located six dollars in Dancy's left jacket pocket and stated, I'm giving you back your money. Dancy then stated to Walls, "what about my cell phone?" Walls held up the cell phone and said, "here, I'm going to put it back in your jacket" and Dancy looked at the phone and said, "good, I'm gonna need that." Walls relates that the phone was located in the same pocket as the .22 cal firearm.

After booking and being remanded to the cell area, Tpr Telford overheard incriminating statements by the defendants. *See attached report by Tpr Telford.

Respectfully Submitted,

Det. Mark Reardon #282

# EXHIBIT B

Hyland entered rear of Boomer's with Trpr Walls and Sgt Kiley. Trpr Walls attempted to secure Def Dancy. Dancy resisted. I assisted Walls bring Dancy to the floor. The cylinder of a silver .22 cal fell from Dancy's pocket. While on the floor, I saw a black handgun slide under the pool table in my direction. Walls had secured Dancy. I retrieved the .22 cylinder and its frame on the floor next to Dancy.

Def Bourne was secured by Sgt Kiley. Def Jones was the only subject standing on the opposite side of the pool table from where I saw the gun slide on the floor. Ofc Cesarini was assisting Det Reardon in securing Def Jones.

Seconds passed when Officer Cesarini pointed to the black handgun which was now on the pool table in front of the center pocket. I cleared the gun. There was one round in the chamber. I secured the gun.

(1) dime-bag of marijuana was secured from Def Jones left front pant pocket during the inventory search @ the station.



097

# EXHIBIT C



# EXHIBIT  D

### *USE OF FORCE REPORT*

TO: CHIEF OF POLICE___Studenski_____    CASE NUMBER : 04015608

FROM : ___Officer Mike Cesarini_____    DATE : __12/8/04_____

### TYPE OF FORCE USED

SERVICE PISTOL : _____ SHOTGUN : _____ POLICE BATON : _____ O.C. PEPPER: SPRAY __✓__

O.C. PEPPER FOAM _____ POLICE K-9 ____ OTHER ____ EXPLAIN _____

_____

LOCATION: __26 Perkins Avenue_____

LOCATION OF INCIDENT: __26 Perkins Avenue_____

DATE OF INCIDENT : __12/8/04___ TIME OF INCIDENT : __2115____

NAME OF DEFENDANT : __Dancy, Willie L___ DOB : __1/31/75___

ADDRESS : __80 Bartlett St 1st Brockton___ TEL NUMBER : _____

MEDICAL ATTENTION REQUIRED __ YES (X NO) HOSPITAL TAKEN TO : _____

SUBJECT ARRESTED : YES _X_ NO ___ CHARGES : _____

PHOTOS TAKEN : YES _X_ NO ___ INVESTIGATING SUPERVISOR : _____

B.C.I. INVESTIGATE : YES ___ NO ___ DETECTIVE ASSIGNED : _____

#### *DESCRIPTION OF EVENTS*

REPORT: ___Trooper Frank Walls and I Officer Cesarini were attempting to place the defendant under arrest for a shooting which Detective Reardon witnessed minutes prior. A gun was found on the defendant's person prior to the attempted arrest. A struggle ensued and the defendant attempted to flee. I sprayed him with a 1 to 2 second burst of OC spray. He became compliant and was taken into custody. He was given bio-shield to neutralize the O.C. No further incident.

SIGNATURE : __M.C. #331__ DATE __12/8/04__ SUPERVISOR __A.T. McCarthy #254__

**099**

# EXHIBIT  E



086

# EXHIBIT  F

# MASSACHUSETTS STATE POLICE
# GANG UNIT

### SUPPLEMENTAL REPORT
### TO BPDCASE# 04015608

On Wednesday, December 8, 2004, at between 2300 and 2359 hours, I (Tpr Erik Telford) was present at Brockton PD for the booking of DANCY, William, JONES, Kevin and BOURNE, Michael. After the above subjects were booked and advised of all rights and charges they were placed in separate cells in the cell block area. DANCY was placed in cell#1, JONES in cell#4, and BOURNE in cell#5. I overheard the DANCY and JONES conversing while they were in their cells.

JONES: "Yo Will, you know the Smith and Wesson don't' take no prints."

DANCY: "What Kev?"

JONES: "The Smith and Wesson don't hold no prints."

Minutes later the parties were talking about what they were being charged with while BOURNE was being booked. JONES explained to DANCY the charges on his booking sheet.

JONES: "Will, I'm getting charged with the big one and you're getting charged with the little one. I'm being charged with receiving stolen property."

DANCY: "I know, I feel you, and you think it's my fault because I had to go and do that shit. I should have been on point. But yo, I'll talk to you later you about that shit because these walls listen. Don't say shit in the cell block."

JONES: "Yo, what's up with Mike? I don't trust that nigga."

DANCY: "Was he right here that whole time but being quiet?"

JONES: "Yeah, they're not charging him with a burner."

DANCY: "Yo, nigga's talking."

JONES: "This is like my third burner case...I'm gonna be 35 when I get out but I'll still be young enough to be a player!"

**006**

DANCY: "I got the same shit Kev. I got three burners, two I did time for and one dismissed. But they got it all wrong. They found the burners under the pool table not in any one's hand. They don't have shit."

JONES: "Yeah, it has to be in your domain or control."

DANCY: "Those niggas should have never left the back door open to do that bullshit."

JONES: "Yeah."

At no point in time during the arrest or booking of the above subjects were the defendants made aware by the police of what types or name brand of firearms were seized. Furthermore, the defendants were not advised which of the two firearms they were being charged with or whether or not the 9mm or the .22 Cal was stolen. They were advised they were being charged with a firearm each, possession of ammo, and JONES was advised of his charge of receiving stolen property, gun.

Respectfully Submitted,

Erik Telford, #2934
Trooper, Mass State Police

# EXHIBIT  G



**MITT ROMNEY**
*GOVERNOR*

**KERRY HEALEY**
*LIEUTENANT GOVERNOR*

**EDWARD A. FLYNN**
*SECRETARY*

**MEL THOMAS G. ROBBINS**
*SUPERINTENDENT*

*The Commonwealth of Massachusetts*
*Department of State Police*

*Firearms Identification Section*
*59 Horse Pond Road*
*Sudbury, Massachusetts, 01776*

DATE: August 17, 2005

FID#: 34235

# CERTIFICATE OF EXAMINATION AND TEST FIRING

Ret. Patrick Donohue
Police Dept.
7 Commercial St.
Brockton, MA 02302

Re: #04015608

Dear Sir,

On December 15, 2004 the following was submitted to this section for examination by yourself.

Description:
1-1 .22MAGNUM caliber North American Arms mini-revolver, serial #E19446.
Center pin and grips missing.
1-2 Two (2) live Ctges, both 22MAGNUM caliber "SUPER-X".

Barrel length: 3 inches    Test Firing: Yes    Malfunctions: Center pin replaced with steel nail.

Remarks: Including cylinder.

One of the submitted live Ctges used testing.

On the basis of my observations, experience, and test firings, it is my opinion that the above submitted evidence is a firearm and ammunition within the meaning of and as defined in Massachusetts General Law Chapter 140 Section 121.

I, Michael R. Arnold, a Massachusetts State Police Officer assigned to the Firearms Identification Section do hereby swear and affirm that I have been qualified as a Ballistics Expert in the District/Superior Courts of the Commonwealth as an expert witness in the area of Firearms Identification in compliance with Massachusetts General Law Chapter 140 section 121A for the issuance of this certificate.

Massachusetts State Police
Firearms Identification Section

Middlesex, ss.

Subscribed and sworn to me this 17th day of August, 2005.

I know this subscriber to be a qualified Ballistics Expert of the Massachusetts State Police Firearms Identification Section.

(Notary Public)

**104**

JOHN P. BUSA
Notary Public
Commonwealth of Massachusetts
My Commission Expires
February 28, 2008

My commission expires:



**Firearms Identification Section**
**59 Horse Pond Road**
**Sudbury, MA 01776**
Voice: (508) 358-3180 Fax: (508) 358-3251

# Evidence Submission Report

| | | | |
|---|---|---|---|
| ab Code / Case No.: | SCL 04-12626 | Case Type: | **Ballistics case** |
| epartment Name: | **Brockton Police Department** | Offense Location: | **Brockton** |
| epartment Case No.: | **04015608** | Offense Date: | **12/08/2004** |
| use Officer: | **Detective Patrick Donohue #380** | Offense Type: | **Possession of Firearm** |
| eference(s): | | | *DEFT: WILLIE DANCY* |
| 04-12626 | 04015608    FID # 34235 | | |

ibmission No.:    1

ibmission Date:    12/15/2004
ibmitted By:    Detective Patrick Donohue #380
omments:

| ontainer # | Item # | Description / Source |
|---|---|---|
| A | 1-1    *BU 3" 10R* | One Firearm (Handgun) Box, Firearm North Amer. Arms .22 Rev (H01455)    *22 magnum cal   mini - revolver   ✱ D 10446   Center pin → replaced with nail   + grips missing   + firing convouclies* |
| B | 1-2 | One small paper bag containing, Ammunition .22 cal    *② live cases   " 22 magnum super X "   one test fires   using 22mg ruger single six rev   MBA*     |

105

*ras Donohue*

vidence Returned To (Signature and Agency of Recipient):

| Date: | Returned By: |
|---|---|
| 12-22-09 | DPR |

# The Commonwealth of Massachusetts
## Department of State Police
### Firearms Identification Section
### 59 Horse Pond Road
### Sudbury, Massachusetts, 01776

**MITT ROMNEY**
*GOVERNOR*

**KERRY HEALEY**
*LIEUTENANT GOVERNOR*

**EDWARD A. FLYNN**
*SECRETARY*

**...AEL THOMAS G. ROBBINS**
*SUPERINTENDENT*

**DATE:** February 1, 2005
**FID#:** 34235

## CERTIFICATE OF EXAMINATION AND TEST FIRING

Det. Patrick Donohue                      Re: #04015608
Police Dept.
7 Commercial St.
Brockton, MA 02302

Dear   Sir,

On  January 21, 2005                       the following was submitted to this section for examination by
yourself.  Tpr. Kevin Halle, CSSS Middleboro

Description: 2-1 9mm caliber Smith & Wesson Model-908 semi automatic pistol, serial
#VJC5543. With magazine and four (4) 9mm caliber live Ctges. 2-2.
2-3 One (1) discharged Ctge casing, "FC 9MM LUGER".

Barrel length:   3 & ½ inches     Test Firing:   Yes          Malfunctions: None
Remarks:                              One of the submitted live Ctges used testing.
As a result of physical and microscopic examination of the tests from item 2-1
against the submitted evidence, it is my opinion that: The discharged Ctge
casing mentioned in item 2-3 was fired by the Smith & Wesson Model-908 pistol,
serial #VJC5543.
On the basis of my observations, experience, and test firings, it is my opinion that the above submitted evidence is
a firearm and ammunition                     within the meaning of and as defined in Massachusetts
General Law Chapter 140 Section 121.

I, Michael R. Arnold, a Massachusetts State Police Officer assigned to the Firearms Identification Section do hereby
swear and affirm that I have been qualified as a Ballistics Expert in the District/Superior Courts of the Commonwealth as an
expert witness in the area of Firearms Identification in compliance with Massachusetts General Law Chapter 140 section
121A for the issuance of this certificate.

Massachusetts State Police
Firearms Identification Section

Middlesex, ss.
Subscribed and sworn to me this   1st   day of   February, 2005.

I know this subscriber to be a qualified Ballistics Expert of the Massachusetts State Police Firearms Identification
Section.

DOUGLAS A. WEDD...ET...
Notary Public
Commonwealth of Massachusetts
My Commission Expires
July 8, 2006

(Notary Public)

106

My commission expires:



# Firearms Identification Section
## 59 Horse Pond Road
## Sudbury, MA 01776
### Voice: (508) 358-3180 Fax: (508) 358-3251

# Evidence Submission Report

| Lab Code / Case No.: | SCL 04-12626 | | Case Type: | Ballistics case |
|---|---|---|---|---|
| Department Name: | Brockton Police Department | | Offense Location: | Brockton |
| Department Case No.: | 04015608 | | Offense Date: | 12/08/2004 |
| Case Officer: | Detective Patrick Donohue #380/DRM | | Offense Type: | Possession of Firearm |
| Reference(s): | | | | |
| 04-12626 | 04015608 | FID # 34235 | | |

DEFT: WILLIE L DANCY

Submission No.:   2

Submission Date:   1/5/2005

Submitted By:   Det.P.Donohue

Comments:   Firearm submitted for examination for latent prints

| Container # | Item # | Description / Source |
|---|---|---|
| C | 2-1 | One paper envelope containing, Item for Fingerprint Examination - S&W 9mm S/N VJC5543,magazine  M-908  w/magazine  BU 3½" 5R  MAG. CAP. = 8 LIVE CT$_{6}$ |
| C | 2-2 | One paper envelope containing, Item for Fingerprint Examination - (4) 9mm rounds  (4)  2 = "WIN 9mm LUGER"  1 = "FC 9mm LUGER" → ONE USED TESTING PMJ  1 = "PMC 9mm LUGER" |

21-05 Received from K. Halle, CSSS Middleboro

107

| Evidence Returned To (Signature and Agency of Recipient): | | Date: | Returned By: |
|---|---|---|---|
| | | 2-2-05 | |



**Firearms Identification Section**
**59 Horse Pond Road**
**Sudbury, MA 01776**
**Voice: (508) 358-3180 Fax: (508) 358-3251**

# Evidence Submission Report

| :b Code / Case No.: | SCL 04-12626 | Case Type: | Ballistics case |
|---|---|---|---|
| :partment Name: | Brockton Police Department | Offense Location: | Brockton |
| :partment Case No.: | 04015608 | Offense Date: | 12/08/2004 |
| .se Officer: | Detective Patrick Donohue #380/DRM | Offense Type: | Possession of Firearm |
| ·ference(s): | | | |

04-12626      04015608      FID # 34235

.bmission No.:      2

| C | 2-3 | One paper envelope containing, Item for Fingerprint Examination - (i) spent 9mm casing |
|---|---|---|
| | | (i) "FC 9MM LUGER" ↳ FIRED BY 2-1 OF CMM |
| | File-305 | One file folder, Case File of CSSS - Middleboro |

*108*

| vidence Returned To (Signature and Agency of Recipient): | Date: | Returned By: |
|---|---|---|
| | | |

# EXHIBIT  H



082

# EXHIBIT  I

**USMS Number:** 25547038
**ORI:** MAUSM0100

**Date of Arrest:** 03 / 08 / 2005
**FBI Number:**

**Last Name:** DANCY
**First Name:** WILLIE
**Middle Name:** LORENZO

**Sex:** M
**Race Code:** B
**DOB:** 01 / 31 / 1975

**Height:** 5 FT 9 IN
**Weight:** 170 **LBS**

**Eye Color:** BRO
**Hair Color:** BLK



**View:** Front

**Date Taken:** 03 / 08   2005

**View:** Side  R

**Date Taken:** 03 / 08 · 2005

LIMITED OFFICIAL USE

**083**

# EXHIBIT J

```
                                                                              *
              ******* WARNING ******** WARNING ********                       *
                                                                              *
     THIS INFORMATION IS CORI.  IT IS NOT SUPPORTED BY FINGERPRINTS.          *
PLEASE CHECK THAT THE NAME REFERENCED BELOW MATCHES THE NAME AND DATE OF BIRTH*
OF THE PERSON REQUESTED.                                                      *
                                                                              *
***************************************************************************
```

```
         **********    COMMONWEALTH OF MASSACHUSETTS    **********
                       CRIMINAL HISTORY SYSTEMS BOARD

              *** PERSONS COURT SUMMARY ***
```

NAM: DANCY, WILLIE L                FORMAL-NAM: WILLIAM          PCF: 00001761968
DOB: 01/31/75   SEX: M  RAC: B         POB: BOSTON MA              SSN: 031746850
MOM:DEBRA DANCY         POP:WILLIE ROBINSON HGT: 508 WGT: 160 HAI: BLK EYE: BRO
ADDRESS: 80 BARTLETT ST APT 1 BROCKTON MA


ALIAS:
     NAM: DANCY, WILLIAM L
     FORMAL-NAM: WILLIAM
     DOB: 01/31/75  SEX: M  RAC:



**** ***** ***** ***** ADULT APPEARANCES ***** ***** ***** *****

ARRAIGNMENT: (001)
  ARG-DATE: 12/09/04 PD: BRO COURT: BROCKTON DISTRICT        DKT#:  0415CR008920A
  OFF:  DISCHARGING A FIREARM        W/I 500' BLDG           FIR DISCH
  DISP: C 1/6/05                                             STATUS: O   WPD:


ARRAIGNMENT: (002)
  ARG-DATE: 12/09/04 PD: BRO COURT: BROCKTON DISTRICT        DKT#:  0415CR008920B
  OFF:  FIREARM VIOLATION(SPECIFY)      UNLIC CARRY          FIR
  DISP: C 1/6/05                                             STATUS: O   WPD:


ARRAIGNMENT: (003)
  ARG-DATE: 12/09/04 PD: BRO COURT: BROCKTON DISTRICT        DKT#:  0415CR008920C
  OFF:  FIREARM VIOLATION(SPECIFY)      UNLIC CARRY          FIR
  DISP: C 1/6/05                                             STATUS: O   WPD:


ARRAIGNMENT: (004)
  ARG-DATE: 12/09/04 PD: BRO COURT: BROCKTON DISTRICT        DKT#:  0415CR008920D
  OFF:  POSS OF FIREARM               W/O FID CARD           FIR POSS
  DISP: C 1/6/05                                             STATUS: O   WPD:
```

**023**

RRAIGNMENT: (005)
ARG-DATE: 12/09/04 PD: BRO COURT: BROCKTON DISTRICT          DKT#:  0415CR008920E
OFF:  POSS OF FIREARM              W/O FID CARD              FIR POSS
DISP: C 1/6/05                                              STATUS: O   WPD:


RRAIGNMENT: (006)
ARG-DATE: 12/09/04 PD: BRO COURT: BROCKTON DISTRICT          DKT#:  0415CR008920F
OFF:  DISORDERLY CONDUCT                                    DIS COND
DISP: C 1/6/05                                              STATUS: O   WPD:


RRAIGNMENT: (007)
ARG-DATE: 12/09/04 PD: BRO COURT: BROCKTON DISTRICT          DKT#:  0415CR008920G
OFF:  RESISTING ARREST                                      RESIST ARST
DISP: C 1/6/05                                              STATUS: O   WPD:


RRAIGNMENT: (008)
ARG-DATE: 12/09/04 PD: BRO COURT: BROCKTON DISTRICT          DKT#:  0415CR008920H
OFF:  KNOWINGLY REC STOLEN PROP     MORE - FIREARM          RSG
DISP: C 1/6/05                                              STATUS: O   WPD:


RRAIGNMENT: (009)
ARG-DATE: 11/04/04 PD: BRO COURT: BROCKTON DISTRICT          DKT#:  0415CR007159A
OFF:  B&E NT W/I COM FEL                                    B&E NT W/I FEL
DISP: WAR 12/9/04 WR C 1/6/05                               STATUS: O   WPD:


RRAIGNMENT: (010)
ARG-DATE: 11/04/04 PD: BRO COURT: BROCKTON DISTRICT          DKT#:  0415CR007160A
OFF:  A&B DANGEROUS WEAPON              KNIFE               A&B DW
DISP: WAR 12/9/04 WR C 1/6/05                               STATUS: O   WPD:


RRAIGNMENT: (011)
ARG-DATE: 11/04/04 PD: BRO COURT: BROCKTON DISTRICT          DKT#:  0415CR007160B
OFF:  ASSAULT AND BATTERY                                   A&B
DISP: WAR 12/9/04 WR C 1/6/05                               STATUS: O   WPD:


RRAIGNMENT: (012)
ARG-DATE: 05/03/02 PD: BRO COURT: BROCKTON DISTRICT          DKT#:  0215CR003444A
OFF:  FIREARM VIOLATION(SPECIFY)     UNL POSS LGE CAP.      FIR
DISP: C 9/26/02 (JT) 6/17/03 DISM                          STATUS: C   WPD:

**024**

RRAIGNMENT: (013)
ARG-DATE: 05/03/02 PD: BRO COURT: BROCKTON DISTRICT          DKT#:  0215CR003444B

RRAIGNMENT: (014)
 ARG-DATE: 05/03/02 PD: BRO COURT: BROCKTON DISTRICT     DKT#:  0215CR003444C
 OFF:  FIREARM VIOLATION(SPECIFY)     UNL CARRY          FIR
 DISP: C 9/26/02 (JT) 6/17/03 G 1YR CMTD                 STATUS: C    WPD:


RRAIGNMENT: (015)
 ARG-DATE: 05/03/02 PD: BRO COURT: BROCKTON DISTRICT     DKT#:  0215CR003444D
 OFF:  FIREARM VIOLATION(SPECIFY)     UNL POSS           FIR
 DISP: C 9/26/02 (JT) 6/17/03 G FILE                     STATUS: C    WPD:


RRAIGNMENT: (016)
 ARG-DATE: 05/03/02 PD: BRO COURT: BROCKTON DISTRICT     DKT#:  0215CR003444E
 OFF:  FIREARM VIOLATION(SPECIFY)     UNL POSS           FIR
 DISP: C 9/26/02 (JT) 6/17/03 G FILE                     STATUS: C    WPD:


RRAIGNMENT: (017)
 ARG-DATE: 05/03/02 PD: BRO COURT: BROCKTON DISTRICT     DKT#:  0215CR003444F
 OFF:  POSS TO DISTRIBUTE CLASS B                        CSA POSS DIST B
 DISP: C 9/26/02 (JT) 6/17/03 G 90DA CMTD                STATUS: C    WPD:


RRAIGNMENT: (018)
 ARG-DATE: 05/03/02 PD: BRO COURT: BROCKTON DISTRICT     DKT#:  0215CR003444G
 OFF:  POSS TO DISTRIBUTE CLASS D                        CSA POSS DIST D
 DISP: C 9/26/02 (JT) 6/17/03 G 90DA CMTD                STATUS: C    WPD:


RRAIGNMENT: (019)
 ARG-DATE: 05/03/02 PD: BRO COURT: BROCKTON DISTRICT     DKT#:  0215CR003444H
 OFF:  POSS CLASS B CONT SUB                             CSA POSS B
 DISP: C 9/26/02 (JT) 6/17/03 DISM                       STATUS: C    WPD:


RRAIGNMENT: (020)
 ARG-DATE: 05/03/02 PD: BRO COURT: BROCKTON DISTRICT     DKT#:  0215CR003444I
 OFF:  CONTROL SUBSTANCE SCHOOL                          CSA SCHOOL
 DISP: C 9/26/02 (JT) 6/17/03 G 2YRS CMTD                STATUS: C    WPD:


RRAIGNMENT: (021)
 ARG-DATE: 02/20/02 PD: BRO COURT: BROCKTON DISTRICT     DKT#:  0215CR001286A
 OFF:  OPERATING AFTER SUSPEND LIC                       114B-SUS
 DISP: C 3/29/02 DF 4/1/02 DR C 6/12/02 G FILE           STATUS: C    WPD:

RRAIGNMENT: (022)
 ARG-DATE: 02/20/02 PD: BRO COURT: BROCKTON DISTRICT          DKT#:   0215CR001286B
 OFF:  COMPULSORY INSURANCE VIOLATION                        118A
 DISP: C 3/29/02 DF 4/1/02 DR C 6/12/02 G FILE               STATUS: C   WPD:


RRAIGNMENT: (023)
 ARG-DATE: 10/18/01 PD: BRO COURT: BROCKTON DISTRICT          DKT#:   0115CR006665A
 OFF:  OPERATING AFTER SUSPEND LIC                           114B-SUS
 DISP: C 1/16/02 CC C 6/12/02 PD DISM                        STATUS: C   WPD:


RRAIGNMENT: (024)
 ARG-DATE: 10/18/01 PD: BRO COURT: BROCKTON DISTRICT          DKT#:   0115CR008466A
 OFF:  MAL DESTRUCTION OF PROPERTY     LESS                  PROP MAL DES
 DISP: C 1/16/02 DISM                                        STATUS: C   WPD:


RRAIGNMENT: (025)
 ARG-DATE: 10/18/01 PD: BRO COURT: BROCKTON DISTRICT          DKT#:   0115CR008466B
 OFF:  OPERATING AFTER SUSPEND LIC                           114B-SUS
 DISP: C 1/16/02 DISM                                        STATUS: C   WPD:


RRAIGNMENT: (026)
 ARG-DATE: 04/18/01 PD: BRO COURT: BROCKTON DISTRICT          DKT#:   0115CR003159A
 OFF:  KNOWINGLY REC STOLEN PROP       MV                    RSG
 DISP: C 7/13/01 DISM                                        STATUS: C   WPD:


RRAIGNMENT: (027)
 ARG-DATE: 10/12/00 PD: BRO COURT: BROCKTON DISTRICT          DKT#:   0015CR006728A
 OFF:  TRESPASSING                                           TRES
 DISP: G $100 FINE C 1/10/01 PD DISM                         STATUS: C   WPD:


RRAIGNMENT: (028)
 ARG-DATE: 08/28/00 PD: BRO COURT: BROCKTON DISTRICT          DKT#:   0015CR006386A
 OFF:  TRESPASSING                                           TRES
 DISP: C 10/10/00 G $100 FINE C 1/10/01 PD DISM              STATUS: C   WPD:


RRAIGNMENT: (029)
 ARG-DATE: 08/01/00 PD: BRO COURT: BROCKTON DISTRICT          DKT#:   0015CR005623A
 OFF:  TRESPASSING                                           TRES
 DISP: C 8/23/00 (JT) C 10/10/00 G $100 FINE C 1/10/01       STATUS: C   WPD:
       PD DISM

**026**

RRAIGNMENT: (030)

ARG-DATE: 07/21/00 PD: BRO COURT: BROCKTON DISTRICT       DKT#:   0015CR005419A
OFF:   TRESPASSING                                        TRES
DISP: C 8/23/00 (JT) C 10/10/00 G $100 FINE C 1/10/01    STATUS: C   WPD:
      PD DISM


RRAIGNMENT: (031)
ARG-DATE: 05/08/97 PD: BRO COURT: BROCKTON DISTRICT       DKT#:   9715CR003555A
OFF:   TRESPASSING                                        TRES
DISP: C 5/13/97 (JT) C 6/16/97 G 3MO CMTD                 STATUS: C   WPD:


RRAIGNMENT: (032)
ARG-DATE: 05/08/97 PD: BRO COURT: BROCKTON DISTRICT       DKT#:   9715CR003555B
OFF:   POSS CLASS B CONT SUB                              CSA POSS B
DISP: C 5/13/97 (JT) C 6/16/97 G 3MO CMTD                 STATUS: C   WPD:


RRAIGNMENT: (033)
ARG-DATE: 05/08/97 PD: BRO COURT: BROCKTON DISTRICT       DKT#:   9715CR003555C
OFF:   CONSPIRACY TO VIO CONT SUB ACT                     CSA CONSP
DISP: C 5/13/97 (JT) C 6/16/97 DISM                       STATUS: C   WPD:


RRAIGNMENT: (034)
ARG-DATE: 02/24/97 PD: BRO COURT: BROCKTON DISTRICT       DKT#:   9715CR001388A
OFF:   FIREARM VIOLATION(SPECIFY)      UNL CARRY          FIR
DISP: C 4/11/97 (JT) C 5/13/97 G 6MO CMTD                 STATUS: C   WPD:


RRAIGNMENT: (035)
ARG-DATE: 02/24/97 PD: BRO COURT: BROCKTON DISTRICT       DKT#:   9715CR001388B
OFF:   FIREARM VIOLATION(SPECIFY)      UNL POSS           FIR
DISP: C 4/11/97 (JT) C 5/13/97 G 1YR CMTD                 STATUS: C   WPD:


RRAIGNMENT: (036)
ARG-DATE: 02/24/97 PD: BRO COURT: BROCKTON DISTRICT       DKT#:   9715CR001388C
OFF:   POSS CLASS D CONT SUB                              CSA POSS D
DISP: C 4/11/97 (JT) C 5/13/97 G FILE                     STATUS: C   WPD:


RRAIGNMENT: (037)
ARG-DATE: 02/24/97 PD: BRO COURT: BROCKTON DISTRICT       DKT#:   9715CR001388D
OFF:   KNOWINGLY REC STOLEN PROP       MORE               RSG
DISP: C 4/11/97 (JT) C 5/13/97 DISM                       STATUS: C   WPD:


RRAIGNMENT: (038)
ARG-DATE: 10/12/95 PD: BRO COURT: BROCKTON DISTRICT       DKT#:   9515CR007900A
OFF:   CONCEALING LEASED PROPERTY                         PROP CONCL L
DISP: C 10/25/95 DISM                        **027**      STATUS: C   WPD:

RRAIGNMENT: (039)
 ARG-DATE: 09/19/95 PD: BRO COURT: BROCKTON DISTRICT      DKT#:  9515CR008434A
 OFF:  INTIMIDATION                                       INTIM
 DISP: C 10/25/95 (JT) C 1/11/96 DISM                     STATUS: C   WPD:


RRAIGNMENT: (040)
 ARG-DATE: 09/19/95 PD: BRO COURT: BROCKTON DISTRICT      DKT#:  9515CR008434B
 OFF:  POSS CLASS D CONT SUB                              CSA POSS D
 DISP: C 10/25/95 (JT) C 1/11/96 DISM                     STATUS: C   WPD:


RRAIGNMENT: (041)
 ARG-DATE: 01/26/95 PD: BRO COURT: BROCKTON DISTRICT      DKT#:  9515CR000736A
 OFF:  THREATENING                 MURDER                 THREAT
 DISP: C 2/16/95 DISM                                     STATUS: C   WPD:


RRAIGNMENT: (042)
 ARG-DATE: 01/26/95 PD: BRO COURT: BROCKTON DISTRICT      DKT#:  9515CR000736B
 OFF:  CRIME OF (SPECIFY IN FULL)     DISRUPT CT PROCEED  CRIME OF
 DISP: C 2/16/95 G FILE                                   STATUS: C   WPD:


RRAIGNMENT: (043)
 ARG-DATE: 09/19/94 PD: BRO COURT: BROCKTON DISTRICT      DKT#:  9415CR405970A
 OFF:  A&B ON POLICE OFFICER                              A&B PO
 DISP: DF DR C 2/17/95 (JT) C 5/16/95 DF DR DF 9/19/95 DR STATUS: C   WPD:
       C 9/28/95 G 4MO CMTD


RRAIGNMENT: (044)
 ARG-DATE: 09/19/94 PD: BRO COURT: BROCKTON DISTRICT      DKT#:  9415CR405970B
 OFF:  A&B DANGEROUS WEAPON                               A&B DW
 DISP: DF DR C 2/17/95 (JT) C 5/16/95 DR DF 9/19/95 D/R   STATUS: C   WPD:
       C 9/28/95 G 4MO CMTD


RRAIGNMENT: (045)
 ARG-DATE: 09/19/94 PD: BRO COURT: BROCKTON DISTRICT      DKT#:  9415CR405970C
 OFF:  DISTURBANCE                                        DISTURB
 DISP: DF DR C 2/17/95 (JT) C 5/16/95 DF DR DF 9/19/95 DR STATUS: C   WPD:
       C 9/28/95 G FILE


RRAIGNMENT: (046)
 ARG-DATE: 09/19/94 PD: BRO COURT: BROCKTON DISTRICT      DKT#:  9415CR405970D
 OFF:  DISORDERLY PERSON                                  DIS PERS
 DISP: DF DR C 2/17/95 (JT) C 5/16/95 DF DR DF 9/19/95 DR STATUS: C   WPD:
       C 9/28/95 G FILE

ARRAIGNMENT: (047)
ARG-DATE: 08/22/94 PD: BRO COURT: BROCKTON DISTRICT   DKT#:   9415CR405097A
OFF:  B&E DT W/I COM FEL                              B&E DT W/I FEL
DISP: C 5/16/95 DF DR DF 9/19/95 DR C 9/28/95 DISM    STATUS: C   WPD:


ARRAIGNMENT: (048)
ARG-DATE: 08/22/94 PD: BRO COURT: BROCKTON DISTRICT   DKT#:   9415CR405097B
OFF:  COMPULSORY INSURANCE VIOLATION                 118A
DISP: C 5/16/95 DF DR DF 9/19/95 DR C 9/28/95 DISM    STATUS: C   WPD:


ARRAIGNMENT: (049)
ARG-DATE: 07/26/94 PD: BRO COURT: BROCKTON DISTRICT   DKT#:   9415CR403751A
OFF:  POSS CLASS B CONT SUB                           CSA POSS B
DISP: C 12/12/94 (JT) C 5/16/95 DF DR DF 9/19/95 D/R C   STATUS: C   WPD:
      C 9/28/95 G 4MO CMTD


ARRAIGNMENT: (050)
ARG-DATE: 07/26/94 PD: BRO COURT: BROCKTON DISTRICT   DKT#:   9415CR403751B
OFF:  A&B ON POLICE OFFICER                           A&B PO
DISP: C 12/12/94 (JT) 5/16/95 DF DR DF 9/19/95 D/R C   STATUS: C   WPD:
      C 9/28/95 G 4MO CMTD


ARRAIGNMENT: (051)
ARG-DATE: 07/26/94 PD: BRO COURT: BROCKTON DISTRICT   DKT#:   9415CR403751C
OFF:  A&B DANGEROUS WEAPON                            A&B DW
DISP: C 12/12/94 (JT) 5/16/95 DF DR DF 9/19/95 D/R C   STATUS: C   WPD:
      9/28/95 G 4MO CMTD


ARRAIGNMENT: (052)
ARG-DATE: 07/26/94 PD: BRO COURT: BROCKTON DISTRICT   DKT#:   9415CR403751D
OFF:  DISTURBANCE                                     DISTURB
DISP: C 12/12/94 (JT) 5/16/95 DF DR DF 9/19/95 D/R C   STATUS: C   WPD:
      9/28/95 G FILE


ARRAIGNMENT: (053)
ARG-DATE: 07/26/94 PD: BRO COURT: BROCKTON DISTRICT   DKT#:   9415CR403751E
OFF:  FIREARM VIOLATION(SPECIFY)     UNLAW POSS       FIR
DISP: C 5/22/95 DF 9/19/95 D/R C 9/28/95 DISM         STATUS: C   WPD:


ARRAIGNMENT: (054)
ARG-DATE: 06/29/94 PD: BRO COURT: BROCKTON DISTRICT   DKT#:      341582
OFF:  OPEN AND GROSS                                  O&G
DISP: C 8/30/94 DISM                                  STATUS: C   WPD:


ARRAIGNMENT: (055)
ARG-DATE: 06/29/94 PD: BRO COURT: BROCKTON DISTRICT   DKT#:      341583
OFF:  DISORDERLY PERSON                               DIS PERS

RRAIGNMENT: (056)
ARG-DATE: 11/19/93 PD:     COURT: BROCKTON DISTRICT        DKT#:        332551
OFF:  DISTRIBUTE/DISPENSE CLASS B                         CSA DIST B
DISP: C 12/6/93 DISM                                      STATUS: C   WPD:


RRAIGNMENT: (057)
ARG-DATE: 11/19/93 PD:     COURT: BROCKTON DISTRICT        DKT#:        332552
OFF:  DISTRIBUTE/DISPENSE CLASS B                         CSA DIST B
DISP: C 12/6/93 G 16MO CMTD 4/22/94 R/R 11MO SS 2/23/95   STATUS: C   WPD:
      11/29/94 VOP 5/16/95WAR WR WAR 9/28/95 11MO CMTD


RRAIGNMENT: (058)
ARG-DATE: 09/15/93 PD:     COURT: BROCKTON DISTRICT        DKT#:        329483
OFF:  DISTRIBUTE/DISPENSE CLASS B                         CSA DIST B
DISP: C 4/13/94 3/30/94 G FILE                           STATUS: C   WPD:


RRAIGNMENT: (059)
ARG-DATE: 09/15/93 PD:     COURT: BROCKTON DISTRICT        DKT#:        329484
OFF:  POSS TO DISTRIBUTE CLASS B                          CSA POSS DIST B
DISP: C 4/13/94 3/30/94 G FILE                           STATUS: C   WPD:


RRAIGNMENT: (060)
ARG-DATE: 09/15/93 PD:     COURT: BROCKTON DISTRICT        DKT#:        329485
OFF:  CONSPIRACY TO VIO CONT SUB ACT                      CSA CONSP
DISP: C 4/13/94 3/30/94 G FILE                           STATUS: C   WPD:


RRAIGNMENT: (061)
ARG-DATE: 09/15/93 PD:     COURT: BROCKTON DISTRICT        DKT#:        329486
OFF:  TRESPASSING                     BUILDING            TRES
DISP: C 4/13/94 3/30/94 G FILE                           STATUS: C   WPD:


RRAIGNMENT: (062)
ARG-DATE: 07/02/93 PD:     COURT: BROCKTON DISTRICT        DKT#:        326101
OFF:  A&B DANGEROUS WEAPON                                A&B DW
DISP: C 4/13/94 3/30/94 DISM                             STATUS: C   WPD:


RRAIGNMENT: (063)
ARG-DATE: 06/30/93 PD:     COURT: BROCKTON DISTRICT        DKT#:        326051
OFF:  KNOWINGLY REC STOLEN PROP                           RSG
DISP: C 2/23/94 G PROB 2/23/95 REST VWF 11/29/94 VOP C    STATUS: C   WPD:
      5/16/95 WAR WR WAR 9/19/95 W/R 9/28/95 11MO CMTD

**030**

```
RRAIGNMENT: (064)
ARG-DATE: 05/21/93 PD:      COURT: BROCKTON DISTRICT      DKT#:        323843
OFF:  ASSAULT DANGEROUS WEAPON                           ASLT DW
DISP: C 2/23/94 DISM                                     STATUS: C    WPD:



RRAIGNMENT: (065)
ARG-DATE: 05/21/93 PD:      COURT: BROCKTON DISTRICT      DKT#:        323844
OFF:  ASSAULT AND BATTERY                                A&B
DISP: C 2/23/94 DISM                                     STATUS: C    WPD:



RRAIGNMENT: (066)
ARG-DATE: 01/05/93 PD:      COURT: BROCKTON DISTRICT      DKT#:        317800
OFF:  B&E NT W/I COM FEL                                 B&E NT W/I FEL
DISP: DF 8/25/93 D/R C 4/13/94 3/30/94 DISM             STATUS: C    WPD:



RRAIGNMENT: (067)
ARG-DATE: 01/05/93 PD:      COURT: BROCKTON DISTRICT      DKT#:        317801
OFF:  TRESPASSING                          BLDG         TRES
DISP: DF 8/25/93 D/R C 3/30/94 G FILE                   STATUS: C    WPD:



**** ***** ***** **** END OF ADULT APPEARANCES ***** ***** ***** *****

EQUESTED BY: SHEILA O'HARA
OMPLETED BY: O'HARA, SHEILA
      AGENCY: US ATF - BOSTON
```

**031**

AM: DANCY, WILLIE L                    PCF: 00001761968 DOB: 01/31/75
**********************************************************************
** THE FOLLOWING ARRAIGNMENTS ARE JUVENILE APPEARANCES ***
** PLEASE CHECK THE NEWS FILE FOR DISSEMINATION GUIDELINES ***
**********************************************************************

RRAIGNMENT: (001)
  ARG-DATE: 11/04/91 PD:      COURT: BROCKTON JUVENILE      DKT#:      9115JV0781
  OFF:  CONTROL SUBSTANCE SCHOOL      B                     CSA SCHOOL
  DISP: C 3/6/92 CMTD DYS                                   STATUS: C    WPD:


RRAIGNMENT: (002)
  ARG-DATE: 11/04/91 PD:      COURT: BROCKTON JUVENILE      DKT#:      9115JV0781A
  OFF:  POSS CONTROLLED SUBS W/I DIST  B                    CSA POSS DIST
  DISP: C 3/6/92 CMTD DYS                                   STATUS: C    WPD:


RRAIGNMENT: (003)
  ARG-DATE: 05/23/90 PD:      COURT: DORCHESTER JUVENILE    DKT#:      9007JV0342A
  OFF:  A&B DANGEROUS WEAPON            IRON CROW BAR        A&B DW
  DISP: CWOF 6/4/91 VWF 10/3/90 R/R CMTD DYS                STATUS: C    WPD:


**** ***** ***** **** END OF JUVENILE APPEARANCES ***** ***** ***** *****

REQUESTED BY: SHEILA O'HARA
COMPLETED BY: O'HARA, SHEILA
        AGENCY: US ATF - BOSTON

**032**