UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-12227-RGS
CRIMINAL ACTION NO. 04-10387-RGS

WILLIE DANCY

v.

UNITED STATES OF AMERICA

MEMORANDUM AND ORDER ON PETITIONER'S
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

April 30, 2013

STEARNS, D.J.

Petitioner Willie Dancy filed this *pro se* petition to vacate, set aside, or correct

his sentence pursuant to 28 U.S.C. § 2255.  Dancy argues that his conviction should

be vacated because his trial and appellate counsel committed several prejudicial errors

that rendered their assistance ineffective within the meaning of the Sixth Amendment.

For the reasons to be stated, the petition will be denied.

BACKGROUND

The facts underlying Dancy's arrest and conviction as developed at the hearing

on the motion to suppress and at his trial are straightforward.  On the night of

December 8, 2004, Brockton police detective Mark Reardon observed four males

congregating around a new Mercedes Benz at a gas station in a high crime area of

Brockton.  Reardon suspected that the men were involved in a drug deal.  He circled back towards the gas station to obtain and run the vehicle's license plate number.  As Reardon did so, he observed a black male running towards the Mercedes pointing a "full-size, large-frame semiautomatic" in its direction.  The man fired a shot into the air as the Mercedes sped away.  He then jogged towards a nearby alleyway.

Reardon radioed a report of gunfire and requested assistance.  He initially described the shooter as a black male wearing a "black hoodie."  Moments later, he corrected himself, describing the suspect as a black male with cornrow braids and dressed in a gray hooded sweatshirt with lettering and dark blue jeans.  When asked by another officer whether the suspect was wearing a black or gray hooded sweatshirt, Reardon confirmed the color as gray.  He also stated that the suspect resembled David Taylor, an individual well-known to the Brockton police.  Reardon lost sight of the shooter as he ran into the alleyway.  Based on the time of night and the direction taken by the shooter, Reardon believed that he was headed to Boomer's, a nearby bar with an unsavory reputation.

Reardon drove to a vantage point that allowed him to observe the rear entrance of Boomer's.  He was joined within minutes by members of a Massachusetts State Police anti-gang task force.  Two officers entered Boomer's through the front door, while three other officers made their way into the lounge through the rear entrance.

2

One of the officers, Massachusetts Trooper Frank Walls – who also knew David Taylor – was drawn immediately to Dancy[1] who matched the description broadcast by Reardon (although he was now wearing a black leather jacket over the gray hooded sweatshirt).  Walls made eye contact with Dancy who pivoted and thrust his hand into the right pocket of his jacket.  Dancy made a beeline towards the front of the bar.

Believing that Dancy had reached into his pocket for a gun, Walls grabbed Dancy's arm and his jacket pocket.  Feeling a hard object in the pocket that he knew from experience to be a firearm, Walls yelled "gun" several times to alert his fellow officers.  Dancy denied possessing a gun and a struggle ensued.  Dancy briefly broke free from the grip of two officers.  He attempted to hand a .22 caliber revolver to a bystander who refused to take it.  Dancy dropped the gun to the floor where it shattered on impact breaking the cylinder loose from the frame.  One of the cartridge chambers in the cylinder contained a live bullet.  (A second round of ammunition was found later in Dancy's jacket pocket).  The pin securing the cylinder to the frame of the revolver was never found by police.

After Walls shouted "gun," a separate incident erupted at the rear of the lounge. An officer witnessed a man later identified as Kevin Jones attempting to slide a 9-

---

[1] Walls was wearing a Massachusetts State Police sweatshirt with his police badge and sidearm plainly visible.

millimeter semi-automatic pistol underneath a pool table.  The pistol resembled the one that  Reardon had seen earlier in the possession of the shooter.  Both Jones and Dancy were subdued and placed under arrest.  While the two men were in adjacent cells at the Brockton Police station, an officer overheard them exchange incriminating statements regarding the two guns.  Dancy was eventually charged as a felon in possession of the .22 caliber firearm and ammunition.  He was not charged with possessing the 9-millimeter hand gun.

In due course, Dancy brought a motion to suppress the .22 caliber pistol and the ammunition, as well as the incriminating statements that he had made while in the holding cell, principally on the ground that Walls' attempt to physically restrain him amounted to a warrantless arrest without probable cause.  This court denied the motion. While the court agreed that Walls' attempt to seize Dancy was tantamount to a formal arrest, it found the elements making up a showing of probable cause to be "particularly strong."  These included: Reardon's direct observation of the street shooting and his detailed description of Dancy; the apprehension of Dancy in the immediate aftermath of the shooting; the initial attempt by Dancy to evade contact with the officers; and the ostensibly threatening gesture made by Dancy in reaching for his pocket.  At the conclusion of his trial,  Dancy was convicted by the jury and sentenced by the court to fifteen years of imprisonment under the Armed Career Criminal Act (ACCA), 18

U.S.C. § 924(e).   On appeal, the First Circuit affirmed Dancy's conviction and sentence.  *See United States v. Dancy*, 640 F.3d 455 (1st Cir. 2011).  The United States Supreme Court denied Dancy's petition for writ of certiorari on November 7, 2011.  This section 2255 petition followed.[2]

## DISCUSSION

Section 2255 is not a substitute for direct appeal, but rather provides post-conviction relief in four limited instances: "if the petitioner's sentence was (1) imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack."  *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998).  "The catch-all fourth category includes only assignments of error that reveal 'fundamental defect[s]' which, if uncorrected, will 'result[ ] in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'"  *Id.*, quoting *Hill v. United States*, 368 U.S. 424, 428 (1962).   In other words, a

---

[2] The government claims that Dancy's petition is barred by the one-year limitation period for section 2255 claims because his petition "is dated November 28, 2012."  This is incorrect.  While Dancy's memorandum in support of his petition bears that date, the petition itself was signed by Dancy on November 5, 2012, and placed in the prison mail system the following day.  Thus, his petition is timely.  *See Morales-Rivera v. United States*, 184 F.3d 109 (1st Cir. 1999) (per curiam) ("We hold that a *pro se* prisoner's motion under 28 U.S.C. § 2255 . . . is filed on the date that it is deposited in the prison's internal mail-system for forwarding to the district court . . . .").

cognizable section 2255 claim that does not raise constitutional or jurisdictional issues must reveal "exceptional circumstances" that compel redress. *Id.* The petitioner bears the burden of demonstrating an entitlement to such relief. *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980).

Dancy contends that he did not receive effective assistance from his trial or his appellate counsel.[3] He argues that his attorneys were variously ineffective for: (1) failing to contest his sentence enhancement under the ACCA; (2) failing to move for dismissal of his indictment on speedy trial grounds; (3) failing to move for a re-opening of the suppression hearing upon the alleged discovery of new (and exculpatory) evidence; (4) failing to identify and challenge alleged prosecutorial misconduct; (4) failing to investigate and present exculpatory and impeachment evidence; (5) failing to object to the presentation of non-admitted evidence at trial; and (7) making comments during the opening statement that prejudiced Dancy's cause.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defence." The right to counsel includes the right to effective counsel. *Strickland v. Washington*, 466 U.S.

---

[3] Ineffective assistance claims are not subject to procedural default. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

668, 686 (1984).  Effective counsel does not mean perfect counsel.  "Judicial scrutiny of counsel's performance must be highly deferential," and "every effort [should] be made to eliminate the distorting effects of hindsight."  *Id*. at 689.  The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.*, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). *Strickland* sets out a two-part test for ineffective assistance claims.  "First, a reviewing court must assess the proficiency of counsel's performance under prevailing professional norms. . . .  This evaluation demands a fairly tolerant approach; after all, the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense. . . .  The second line of inquiry . . . entails a showing of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994) (internal quotation marks omitted).

To satisfy the first prong of the *Strickland* test, Dancy must demonstrate that his counsel's performance was so deficient as to have been objectively unreasonable.  *See United States v. McGill*, 11 F.3d 223, 226 (1st Cir. 1993).  Counsel's conduct is considered reasonable if it falls "'within the range of competence demanded of

attorneys in criminal cases.'" *United States v. Bosch*, 584 F.2d 1113, 1121 (1st Cir. 1978), quoting *McMann v. Richardson*, 397 U.S. 759, 770-771 (1970).

To satisfy the second *Strickland* prong, Dancy must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. While Dancy need not prove that his counsel's allegedly deficient conduct more likely than not skewed the result, he must show that his counsel's errors "had some conceivable effect on the outcome of the proceeding." *Id*. at 693; *see also Dugas v. Coplan*, 506 F.3d 1, 9 (1st Cir. 2007).

## I. Application of the ACCA

The ACCA imposes a fifteen-year mandatory minimum sentence on any person found guilty of being a felon in possession of a firearm who has three prior convictions "for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). A "serious drug offense" under state law is one that involves "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . , for which a maximum term of imprisonment of ten years or more is prescribed by law." *Id.* § 924(e)(2)(A)(ii). Dancy contends that his attorneys were ineffective for failing to argue that he did not qualify as a career offender under the ACCA because his two prior state convictions for distribution and possession with intent to distribute cocaine

carried only a maximum two and one-half year term of imprisonment.

The state statute under which Dancy was convicted reads:

Any person who knowingly or intentionally manufactures, distributes, dispenses, or possesses with intent to manufacture, distribute or dispense a controlled substance in Class B of section thirty-one *shall be punished by imprisonment in the state prison for not more than ten years*, *or in a jail or house of correction for not more than two and one-half years*, or by a fine of not less than one thousand nor more than ten thousand dollars, or both such fine and imprisonment.

Mass. Gen. Laws ch. 94C, § 32A (emphasis added).  In Massachusetts, the superior and district courts have concurrent jurisdiction over violations of section 32A.  *See* Mass. Gen. Laws ch. 218, § 26.  However, a state district court cannot as a jurisdictional matter impose a sentence of more than two and one-half years for a violation of section 32A as the incarcerative authority of the district court is limited to sentences to a jail or house of correction (which may not exceed two and one-half years).  *See* Mass. Gen. Laws ch. 218, § 27 (the district court "may not impose a sentence to the state prison").  Dancy reasons that because he was tried in the state district court by way of a complaint and not by way of indictment in the superior court, his prior convictions do not meet the ten-year threshold criterion necessary to serve as serious drug offenses for purposes of the ACCA.

The argument, however, is foreclosed by the Supreme Court's "formal categorical approach" to determining whether a prior conviction is a predicate offense

under the ACCA. This approach "look[s] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor v. United States*, 495 U.S. 575, 600 (1990). "Under the categorial approach – which applies in ACCA cases – the sentencing court typically must limit its inquiry to 'the fact of conviction and the statutory definition of the prior offense.'" *United States v. Moore*, 286 F.3d 47, 49 (1st Cir. 2002) (internal citation omitted), quoting *Taylor*, 495 U.S. at 602. Thus, in considering a virtually identical challenge, the First Circuit squarely held that a conviction in the state district court for a violation of section 32A constitutes a predicate offense under the ACCA. *See Moore*, 286 F.3d at 49 ( "The relevant state statute here, Mass. Gen. Laws ch. 94C § 32(a), allows for a maximum possible penalty of ten years' incarceration, and, thus, fits comfortably within the ambit of 'serious drug offense' as that term is defined in 18 U.S.C. § 924(e)(2)(A)(ii)."). Counsel cannot be found ineffective for respecting established Supreme Court and First Circuit precedent.

## II. Speedy Trial Act

Dancy next claims that his trial attorney was ineffective for failing to move to dismiss his indictment on speedy trial grounds. The Speedy Trial Act mandates that a criminal trial commence within seventy days of the filing of a charging document or the defendant's first appearance in court, whichever occurs last. 18 U.S.C. § 3161(c)(1). The penalty for the government's failure to adhere to the time limit is a

dismissal on motion of the defendant.  18 U.S.C. § 3162(a)(2).  Dismissal may be with or without prejudice.  *Id.*  The Act, however, excludes certain periods of time from the calculation of the seventy-day period.  As relevant here, these exclusions include: (1) delays resulting from the filing of any pretrial motion until its disposition, 18 U.S.C. § 3161(h)(1)(D); and (2) delays resulting from a continuance that serves the "ends of justice."  18 U.S.C. § 3161(h)(7)(A).

Dancy's Speedy Trial Act claim fails on the pages of the calendar.  The seventy-day clock began to run at Dancy's arraignment on March 10, 2005.  Between the arraignment and the commencement of the trial on October 20, 2008, the parties jointly submitted and this court granted a number of motions for excludable delay pursuant to section 3161(h)(7)(A).[4]  The periods not accounted for by these  motions were excluded from the seventy-day period by the court pursuant to section 3161(h)(1)(D).  Of particular relevance, after Dancy filed his motion to suppress, the court granted both parties' requests for additional time to complete their briefing of the issues.  The requested briefing schedule delayed the hearing of Dancy's motion for four months.  Shortly after the hearing, Dancy sought appointment of new counsel, citing

---

[4] The court granted motions to exclude time for the following periods: 3/10/05-5/31/05; 5/26/05-7/6/05; 3/21/06-5/15/06; 5/15/06-6/30/06; 6/30/06-8/28/06; 8/28/06-9/25/06; 9/25/06-11/07/06; 1/12/07-9/25/07; 9/25/07-2/4/08; 2/4/08-5/5/08; 5/5/08-9/22/08; and 9/22/08-10/20/08.

disagreement with the strategic choices made by his attorney at the suppression hearing (which are reasserted in this petition).  The court granted Dancy's motion and reopened the suppression hearing at his request.  Following the second hearing, the court again granted Dancy's request for additional time to file supplemental memoranda in support of his motion.  The delay resulting from Dancy's prosecution of the motion to suppress falls within the pre-trial motion exclusion of the Speedy Trial Act and bridges any periods of time not excluded by the continuance orders.  Thus, the non-excludable time between Dancy's arraignment and trial does not approach the seventy-day limit stipulated by the Act.  Any delay Dancy now claims to have suffered came largely at his own request.

Moreover, even had more than seventy days of non-excludable time elapsed before the trial, Dancy would be unable to make out a Sixth Amendment violation.  "A violation of the Speedy Trial Act is not, in and of itself, grounds for relief under § 2255 . . . .  [E]ven if a violation of the [Act] is assumed, petitioner is only entitled to relief if [h]e can demonstrate that counsel's failure to move for dismissal constituted ineffective assistance in violation of the Sixth Amendment."  *Troy v. United States*, 2012 WL 4753358, at *7 (D. Mass. Oct. 2, 2012).  To prove ineffective assistance, Dancy must show that there is a reasonable probability that a timely motion to dismiss on speedy trial grounds would have resulted in a dismissal *with prejudice*.  *See id.* at

*9 (even assuming violation of Speedy Trial Act, petitioner could not show prejudice necessary to make out claim for ineffective assistance because there was no reasonable probability that case would have been dismissed with prejudice); *Lewis v. United States*, 2010 WL 2682492, at *3 (D. Mass. July 2, 2010) (same).

A court considering a motion to dismiss an indictment for failure to comply with the seventy-day time limit evaluates three factors under the Act: "(1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a re-prosecution on the administration of this chapter and the administration of justice." 18 U.S.C. § 3162(a). Here, even had Dancy successfully moved for dismissal of his indictment, the dismissal would undoubtedly have been without prejudice. A felon in possession charge against a qualifying career armed criminal is a very serious offense, as evidenced by the fifteen-year mandatory minimum Congress has prescribed as a penalty. In sum, because Dancy provides no credible evidence demonstrating "government misconduct or egregious bad faith (or prejudice) that would have been required to warrant a dismissal with prejudice" (only delay that is mostly attributable to his own doing) his Sixth Amendment claim also fails as a matter of law. *Lewis*, 2010 WL 2682492, at *3.

## III. Suppression Hearing

Many of Dancy's remaining claims stem from the delayed production of a police

recording of Reardon's radio broadcast on the night of the arrest.  The tape of the recording was initially thought to have been the victim of a system malfunction at the time of the dispatch, but it was later discovered and produced ten months prior to the trial.  Dancy contends that his trial counsel was ineffective for failing at that point to attempt to reopen the suppression hearing.  The "newly discovered" information on the tape that he contends would have justified a reopening was Reardon's initial description of the suspected shooter as a black male with a "black hoodie" followed by another officer's reply that he had seem someone fitting that description in the area. Dancy's argument, however, completely ignores what follows on the tape.  Reardon's very next statement, made when he had "lots of visual," corrected the descriptions of the black hoodie to a gray hooded sweatshirt.      Dancy has not offered any explanation whatsoever as to how evidence of Reardon's initial description of a suspect in a black hoodie would have undermined the government's ultimate showing of probable cause.  Thus, counsel was not ineffective for not seeking to reopen the suppression hearing.

## IV. Trial

Dancy's final ineffective assistance claim relates to his counsel's performance at trial.  He alleges that his attorney's opening statement to the jury was constitutionally deficient.  In the statement, counsel contended that:

> [t]he evidence will show that Mr. Dancy was not the person that fired the
> gun outside on Perkins Avenue. *Unfortunately, he does look something
> like the person who fired the gun*, and he also resisted the police when
> they tried to stop him in the bar, and those circumstance caused the police
> to conclude that he was the shooter and to assume that he was the one
> who had the gun that they found in pieces on the floor.

Trial Tr. (Day One) at 30 (emphasis added).  Dancy takes issue with his attorney's

admission of a resemblance between him and the description of the man Reardon saw

fire the gun.  Read in context, it is clear that counsel's concession was made as part of

a reasonable attempt to persuade the jury that Dancy was the victim of mistaken

identity.

More generally, Dancy claims that his counsel was ineffective for failing to

adequately impeach the government's witnesses, and to highlight for the jury (largely

unspecified) misconduct by the prosecution.  Specifically, he faults counsel for failure

to emphasize for the jury Reardon's initial mistaken identification of the black hoodie

and the description of the shooter's firearm as a "large-framed, black semiautomatic."

Neither complaint has traction.  Reardon's initial mistaken perception of the color of the

suspect's sweatshirt was immediately retracted and corrected (as the jury heard).  Nor

is there any particular significance as to whether Reardon accurately described the gun

being carried by the shooter as it was not the gun for which Dancy was eventually

charged.

Finally, Dancy alleges that his counsel was ineffective for eliciting a demonstration on the mechanics of firing the .22 revolver from the ballistician.  It is apparent from the record that counsel's purpose was to further the argument that the gun was not an operable firearm as it did not contain a center pin locking the cylinder to the frame.  Dancy alleges that the demonstration in some way violated the Federal Rules of Evidence.  *But* s*ee United States v. Cartano*, 420 F.2d 362, 364 (1st Cir. 1970) ("It is settled that demonstrative evidence which tends to prove a material issue is admissible if its probative value outweighs its prejudicial tendency.").  Here there was no conceivable prejudice in counsel's attempt to persuade the jury that even if Dancy was in possession of the .22 caliber revolver, the firearm was essentially harmless.

## ORDER

For the foregoing reasons, Dancy's Petition to Vacate Conviction and Correct Sentence is <u>DENIED</u>. The Clerk will dismiss the petition with prejudice and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE