UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 04-10387-RGS
CIVIL ACTION NO. 16-11230-RGS

UNITED STATES

v.

WILLIE DANCY

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR COLLATERAL RELIEF

April 3, 2017

STEARNS, D.J.

Petitioner Willie Dancy seeks habeas corpus relief pursuant to 28 U.S.C. § 2255, contending that his sentence as a career criminal under the Armed Career Criminal Act (ACCA) was unconstitutionally imposed in light of *Johnson v. United States (Johnson II)*, 135 S. Ct. 2551 (2015). The court grants the petition and orders resentencing.

In 2008, Dancy was convicted at trial of being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). The ACCA subjects felons in possession to enhanced penalties if they have at least three prior convictions for "a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). At sentencing, Dancy qualified as an armed career criminal under the ACCA as a result of Massachusetts convictions for two serious drug offenses and two violent

felonies, assault and battery on a police officer (ABPO) and assault and battery with a dangerous weapon (ABDW).[1]  Consequently, the court sentenced Dancy to the fifteen-year minimum under the ACCA.  The First Circuit affirmed Dancy's sentence on appeal, concluding that APBO qualified as a violent felony under the ACCA's "residual clause," 18 U.S.C. § 924(e)(2)(B)(ii).  *See United States v. Dancy*, 640 F.3d 455, 470 (1st Cir. 2011).  Dancy unsuccessfully sought habeas relief from this court in November of 2012.

Dancy's claims of error came back to life in 2015 when *Johnson II* held that the ACCA's residual clause was unconstitutionally void for vagueness. Dancy requested permission to file a second or successive habeas petition, which the Court of Appeals granted on January 20, 2016.  The instant petition was filed on June 24, 2016, shortly after the Supreme Court ruled in *Welch v. United States*, 136 S. Ct. 1257 (2016), that *Johnson II* is retroactive to cases on collateral review.

Dancy's petition argues that neither ABPO nor ABDW are crimes of violence under the ACCA's "force clause," which defines a crime of violence

---

[1] A third offense potentially qualifying as a violent felony was considered at sentencing, but the government conceded on direct appeal that it could not qualify as a predicate offense.  *See United States v. Dancy*, 640 F.3d 455, 464 (1st Cir. 2011).

as one which "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Specifically, he contends that neither offense necessarily involves a "use" of force, because each offense can be committed recklessly.

Navigating the uneven legal landscape created by the ACCA is no easy task. To determine if an offense qualifies under the force clause, a court must first determine whether an offense is "indivisible" or "divisible." This inquiry requires scrutiny of the elements of a given offense. Elements are the aspects of a crime that "the jury must find beyond a reasonable doubt to convict the defendant." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). If a crime is defined by a single, unitary set of elements, it is considered indivisible. *Id.* If, however, a crime can be committed under alternative sets of elements, effectively creating multiple crimes with the same name, it is divisible. *Id.* at 2249.

The divisibility inquiry is important because it shapes the scope of the court's analysis. When faced with an indivisible statute, the court may only look at the elements to determine whether a defendant must necessarily have been convicted of a crime satisfying the force clause. *Id.* at 2248. With a divisible statute, however, the court may examine "a limited class of documents . . . to determine what crime, with what elements, a defendant

was convicted of." *Id.* at 2249. These so-called *Shepard* documents, *see Shepard v. United States*, 544 U.S. 13 (2005), include "the indictment, jury instructions, or plea agreement and colloquy," *Mathis*, 136 S. Ct. at 2249.

Dancy contends that this inquiry is critical to resolving his case. First, he argues that both ABDW and ABPO are indivisible offenses, and therefore categorically overbroad because they sweep in conduct that does not involve a "use" of force. Second, he contends that even if these offenses are divisible, one form of each offense fails to satisfy the force clause because it requires only reckless, rather than intentional, conduct.

The court will focus on the second argument, because Dancy admits that First Circuit precedent effectively bars the first. In *United States v. Tavares*, 843 F.3d 1, 13-18 (1st Cir. 2016), the First Circuit concluded that Massachusetts ABDW is a divisible offense. The reasoning of *Tavares* also compels the conclusion that Massachusetts ABPO is divisible. The central thesis of *Tavares* is that because Massachusetts assault and battery can be committed with two different states of mind (either intentionally or recklessly), and the reckless form (unlike the intentional form) requires a showing that the victim was injured, it is divisible into two sets of elements. 843 F.3d at 16-18. ABPO has the same structure: it can be committed intentionally or recklessly, *see Commonwealth v. Beal*, 474 Mass. 341, 352-

4

353 (2016), and its reckless variant requires a showing of injury to the victim, *see Commonwealth v. Correia*, 50 Mass. App. Ct. 455, 458-459 (2000).

Because the statutes are divisible, this case would have ended had the government produced *Shepard* documents demonstrating that Dancy was convicted of the intentional, rather than reckless, form of ABDW and ABPO. No such documents have been proffered, however, so the court must turn to the question the First Circuit left open in *Tavares*: whether "a conviction under the reckless version of ABDW qualifies as a crime of violence." 843 F.3d at 19. The same question is raised by the reckless form of ABPO.

This stage of the analysis is, if possible, even more metaphysical than the last. The abstruse nature of the inquiry is underscored by the fact that there appears to be no binding precedent interpreting the ACCA that is on point. Instead, the court must engage in a haruspicy of cases interpreting other statutes employing similar language.

Two lines of cases are relevant. The first interprets 18 U.S.C. § 16(a), which defines a "crime of violence" as an offense that has as an element the "use . . . of physical force against the person or property of another."[2] In

---

[2] A careful reader will observe that the sole textual difference between the definition in § 16(a) and the ACCA force clause is that the ACCA condemns the use of physical force "against the person of another," but makes no reference to property. 18 U.S.C. § 924(e)(2)(B)(i).

*Leocal v. Ashcroft*, 543 U.S. 1 (2004), the Supreme Court did not decide whether the word "use" itself embodied a particular mens rea requirement. *Id.* at 9. Instead, it stated that the word "use" is "elastic," and that therefore the term must be interpreted "in its context and in light of the terms surrounding it." *Id.* The Court concluded that the critical phrase for this purpose was "against the person or property of another." *Id.* In light of this phrase, the Court held, to "use" force against another person or their property "requires active employment," not "negligent or merely accidental conduct." *Id.*

*Leocal*, however, explicitly left open the question of whether *reckless* conduct satisfies the "active employment" test. *Id.* at 13. In the wake of *Leocal*, the Courts of Appeals generally held that it did not. *See United States v. Fish*, 758 F.3d 1, 9-10, 10 n.4 (1st Cir. 2014) (collecting cases); *see also United States v. McMurray*, 653 F.3d 367, 374-375 (6th Cir. 2011) (recklessness insufficient under the ACCA); *United States v. Lawrence*, 627 F.3d 1281, 1284 & n.3 (9th Cir. 2010) (same). Specifically, the First Circuit held in *Fish* that ABDW did not qualify as a crime of violence under a near-identical definition in § 16(b) because its reckless form involves "force . . . brought to bear accidentally, rather than being actively employed." *Fish*, 758 F.3d at 9.

6

The Supreme Court's subsequent decision in *Voisine v. United States*, 136 S. Ct. 2272 (2016), upset that settled view. In *Voisine*, the Court held that a reckless assault qualified as a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9). Such misdemeanors have a familiar definition: a qualifying offense "has, as an element, the use or attempted use of physical force." *Id.* § 921(a)(33)(A)(ii). The Court focused on the word "use," declaring that it is "indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct." *Voisine*, 136 S. Ct. at 2279. Standing alone, "use" merely connotes "volitional" acts, as opposed to "an involuntary motion." *Id.* When a defendant engages in a reckless act, he does so "with the understanding that it is substantially likely to [cause harm]," and any resulting injury "is the result of a deliberate decision to endanger another." *Id.*

*Voisine* "calls into question the continuing validity of *Fish*, as well as the similar and analogous holdings of at least ten other circuits." *Tavares*, 843 F.3d at 18. At least two Circuits have applied the reasoning of *Voisine* to conclude that offenses involving a mens rea of recklessness qualify under either the force clause of the ACCA, *see United States v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016), or the identical career offender provision of the

7

Sentencing Guidelines, *see United States v. Howell*, 838 F.3d 489, 499-503 (5th Cir. 2016). Within this circuit, district courts have split over the question. *Compare, e.g., United States v. Lattanzio*, __F. Supp. 3d __, 2017 WL 519241, at *4-7 (D. Mass. Feb. 8, 2017) (recklessness insufficient); *United States v. Sabetta*, __ F. Supp. 3d __, 2016 WL 6157454, at *7-9 (D.R.I. 2016), *reconsideration denied*, 2016 WL 7174618 (D.R.I. Dec. 8, 2016); *and Bennett v. United States*, 2016 WL 3676145 (D. Me. July 6, 2016); *with United States v. Webb*, __ F. Supp. 3d __, 2016 WL 6647929, at *9-12 (D. Mass. 2016) (recklessness sufficient).

The dispute between Dancy and the government thus boils down to whether the *Voisine* or *Leocal*/*Fish* line of cases is more instructive for interpreting the ACCA's force clause. Lacking more definite guidance from the First Circuit, the court concludes that *Leocal* and *Fish* control.

To see why, it is important to begin from the text of each provision. In *Voisine*, the only term of relevance is "use." 136 S. Ct. at 2278. And, as *Voisine* states, "use" is indifferent as to which mens rea element is required; in this sense, it is entirely consistent with *Leocal*'s refusal to decide if "use" alone imports a mens rea element into the statute. *Voisine*, 136 S. Ct. at 2279-2280. The ACCA provision, however, shares with § 16 a qualifying phrase: "against the person of another" in the case of the ACCA, "against the

8

person or property of another" in the case of § 16.  This qualifier drove the *Leocal* Court's analysis; after all, "when interpreting a statute that features a word as elastic as the word 'use', [the court must] construe language in its context and in light of the words surrounding it."  543 U.S. at 9.  When "use" is linked to this qualifying phrase, it connotes "active employment" in a way that the *Leocal* Court concluded was inconsistent with a negligent or accidental act.  *Id*. at 9-10.  Instead, § 16 envisions "a category of violent, active crimes," *id*. at 11, which the Courts of Appeals took to exclude offenses committed recklessly.

This conclusion is not affected by *Voisine*.  The underlying idea is that actively employing force "against the person of another" raises the mens rea stakes, requiring deliberate conduct.  *See, e.g.*, *McMurray*, 653 F.3d at 375; *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1130 (9th Cir. 2006) (en banc); *Oyebanji v. Gonzales*, 418 F.3d 260, 263-264 (3d Cir. 2005) (Alito, J.).  To illustrate the difference, consider a hypothetical the *Voisine* Court discussed in detail: a domestic incident in which a husband recklessly hurls a plate against the wall, which shatters and cuts his wife.  The Court concluded "[t]hat [the] hurl counts as a 'use' of force even if the husband did not know for certain (or have as an object), but only recognized a substantial risk, that a shard from the plate would ricochet and injure his wife."  136 S. Ct. at 2279.

9

The "use" in *Voisine* thus relates to the act which incidentally gives rise to the harm, even though it is not intended to have that effect. Although this is a "use," simpliciter, the ACCA requires not only a use, but one directed "against the person of another." The most natural reading of this language thus requires more than recklessness: throwing a plate against the wall does not involve using force "against the person of another," as would be present if the husband deliberately threw the plate at his wife.

This interpretation is bolstered by the ACCA's description of the offenses it is designed to encompass. The ACCA speaks in terms of a "violent felony," and that phraseology is important to interpreting the definitions the statute provides. *See Johnson v. United States (Johnson I)*, 559 U.S. 133, 140-142 (2010); *United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992) (Breyer, J.). A violent felony that requires physical force used "against the person of another" calls to mind a set of offenses which involve purposeful action, rather than merely reckless behavior. In the past, the First Circuit has recognized that striking an occupied car while driving recklessly can be sufficient to sustain an ABDW conviction, *United States v. Holloway*, 630 F.3d 252, 262 (1st Cir. 2011), as can "conduct that underlies a conviction for operating under the influence and causing serious bodily injury," *United States v. Hart*, 674 F.3d 33, 43 n.8 (1st Cir. 2012). Although perhaps not the

"comical misfit" described in *Johnson I*, there is a palpable oddity in describing this sort of conduct as constituting a "violent felony" justifying a heightened sentence or falling within the category of "violent, active crimes" evoked by the statute.[3] *Johnson I*, 559 U.S. at 140, 145.

Nor is interpreting the similar language of § 921(a)(33)(A)(ii) and the ACCA to mean different things self-contradictory. As the *Voisine* Court noted, differing interpretations could be justified "in light of differences in [the] context and purposes" of each statute. 136 S. Ct. at 2280 n.4. Such is the case here. Section 922(g) is a gun ownership disability designed to keep domestic abusers from committing more serious violent crimes against their partners. *Voisine*, 136 S. Ct. at 2280; *United States v. Castleman*, 134 S. Ct. 1405, 1408-1409 (2014). A lower mens rea requirement helps effectuate that purpose, as perpetrators of domestic violence are frequently prosecuted under misdemeanor state assault or battery statutes that apply to reckless conduct. *Castleman*, 134 S. Ct. at 1411. For this reason the *Voisine* Court explicitly sought to avoid a reading that would render § 922(g) "broadly

---

[3] Nor are these the only examples of reckless conduct which might not be described as a "violent felony." *See, e.g.*, *Commonwealth v. Hall*, 2014 WL 1235920 (Mass. App. Ct. Mar. 27, 2014) (unpublished table decision) (backing up a car in disregard of the risk that a tow truck driver would be struck).

11

inoperative in the 35 jurisdictions with assault laws extending to recklessness." 136 S. Ct at 2280.

The court thus concludes that, even after *Voisine*, an offense which can be committed with a mens rea of recklessness is not a "violent felony," which "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Consequently, in the absence of *Shepard* documents demonstrating that Dancy was convicted of an intentional ABDW, that conviction cannot qualify as a predicate under the ACCA.

The same conclusion also controls Dancy's ABPO conviction. In addition to the basic elements of assault and battery, a conviction for ABPO requires proof that the defendant knew that the victim was a police officer carrying out his duties. *See Dancy*, 640 F.3d at 468. The government contends that this additional element makes all the difference, citing language from *Dancy* indicating that "purposeful conduct is the norm" in ABPO prosecutions. 640 F.3d at 469. Consideration of the "normal" case, however, was a method applied to the now-defunct residual clause, and it has no bearing here. The Massachusetts courts have made clear that recklessness is sufficient for an ABPO conviction, even if uncommon. *Beal*, 474 Mass. at 352; *Correia*, 50 Mass. App. Ct. at 456-458. Given the court's

12

conclusion that a reckless mens rea does not satisfy the force clause, a conviction for ABPO cannot serve as a predicate offense unless the government produces *Shepard* documents to show the defendant was convicted of the intentional version of the offense.[4]

### ORDER

For the foregoing reasons, Dancy's petition for collateral relief is GRANTED. Dancy's sentence is VACATED and he is re-sentenced in accordance with the amended judgment issued this day.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

[4] Even if ABPO required intentional (rather than reckless) conduct in all of its forms, it would still be insufficient to serve as a predicate offense absent *Shepard* documents. Under *Johnson I*, the force involved must be "violent force," and because ABPO (like generic assault and battery) can be committed merely by an offensive touching, *see Beal*, 474 Mass. at 353, it lacks the requisite degree of force to qualify in all its forms, *see Craig v. United States*, 2016 WL 5874965, at *3-4 (D. Me. Oct. 7, 2016).